474 A.2d 208

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

### Joseph Janvier WOODWARD, III.

**Misc. (BV) No. 6, Sept. Term, 1983.**

Court of Appeals of Maryland.

May 2, 1984.

Walter D. Murphy, Jr., Asst. Bar Counsel, Annapolis (Melvin Hirshman, Bar Counsel, Annapolis, on the petition), for petitioner.

No appearance on behalf of respondent.

Argued Before SMITH, ELDRIDGE, DAVIDSON, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

PER CURIAM.

Bar Counsel, acting pursuant to the provisions of Maryland Rule BV9 on behalf of the Attorney Grievance Commission, filed a petition with us seeking disciplinary action against Joseph Janvier Woodward, III, a member of the Bar

of this Court since June 23, 1967. The petition alleged that Woodward had violated Disciplinary Rules by reason of his willful failure to file Maryland State income tax returns for each of the calendar years 1968 through and including 1979, with the exception of the calendar year 1971.

The facts of this case are not contested. Bar Counsel utilized the provisions of Rule 421 to obtain admissions of facts. Woodward made no response. Therefore, under Rule 421 b 2 the facts were deemed admitted.

Pursuant to Rule BV9 b we referred the matter for hearing to a judge of the Fifth Judicial Circuit of Maryland. Woodward filed neither an answer nor other responsive pleadings to the Petition for Disciplinary Action, nor did he appear at the hearing on the merits. Accordingly, the circuit court judge entered a decree pro confesso. He has filed with us a report which states:

### "FINDINGS OF FACT

"The Respondent was employed as an Assistant State's Attorney for Baltimore County from August, 1973, until July, 1981. During the period between January 1, 1970 and May 10, 1981, the Respondent failed to file his State Income Tax returns for the years 1969 through 1979 (except for 1971) and failed to pay his State Income taxes to the Comptroller of the Treasury, except for those amounts which were withheld by Baltimore County as shown on his W2 forms attached to his Returns (Petitioner's Exhibit Nos. 8 and 9). Furthermore, the Respondent willfully and intentionally failed to file any of his State of Maryland Income Tax Returns for the tax years 1969 through and including 1979, with the exception of 1971, until May 11, 1981, which was well after he had been on notice that the Comptroller's Office of the State of Maryland, Income Tax Division, was investigating him for his failure to file these returns. (Petitioner's Exhibits Nos. 7 through 10).

"On January 2, 1981, George F. Smith, Chief of Collection and Compliance, Income Tax Division, wrote to the Respondent concerning his failure to file tax returns for the years

1975 through 1979 (Petitioner's Exhibit No. 10), and enclosed the necessary forms for the Respondent to file these returns. The letter requested that the returns be filed within 30 days or a criminal prosecution would be recommended. The Respondent did not respond to this notice.

"Thaddeus S. Russell, of the Criminal Investigation Unit was assigned to the matter on April 8, 1981, and he (Mr. Russell) asked Mr. Skinner [of the Baltimore Field Office of the Income Tax Division] to try to contact the Respondent to arrange for an appointment to see him. Mr. Skinner called the State's Attorney's Office in Towson on April 23, 24 and 29, 1981, and left messages for the Respondent each time. However, the Respondent failed to reply. Ultimately, on the evening of May 4, 1981, Mr. Russell called the Respondent at his new residence and identified himself and explained the purpose of the call. The Respondent stated that he had received no letters or telephone messages from anyone in the Comptroller's Office. The Respondent further stated to Mr. Russell that he was aware that his tax returns were due and that he had been working with an accountant to prepare them. The Respondent further stated that he had sold his old home to obtain money to pay his tax liabilities and that he would bring the returns to Mr. Russell's office on May 11, 1981, by 12:00 noon.

"On May 11, 1981, at 12:15 p.m., the Respondent had not arrived in Mr. Russell's office, so Mr. Russell began calling the Respondent. He reached him at home at 2:00 p.m., and the Respondent explained that he had not forgotten the appointment, but had not gotten his wife to sign the returns and therefore did not come to Mr. Russell's office. Mr. Russell advised the Respondent that due to the seriousness of this matter, he should bring the returns in as he promised with the understanding that the Respondent's wife's signature could be obtained at a later date. The Respondent appeared at 3:30 p.m. on May 11, 1981 at the Baltimore Field Office of the Comptroller's Office and presented returns for the years 1969 through 1979, and a check in the amount of $10,864.00 in payment of the taxes due for those

years. The Respondent again stated that he had not received any telephone messages from the Income Tax Division. He further indicated that he was having domestic problems and that his wife had put away all of his mail. The Respondent agreed at that meeting to obtain copies of the W2 forms issued to his wife for which he claimed credit for withholding taxes for the years 1973, 1975 and 1976. He also stated that he would obtain a statement from his wife in writing to the effect that she assented to the returns as filed. The Respondent stated he would submit these with his first penalty and interest payment on June 15, 1981.

"On May 15, 1981, the Comptroller's Office mailed the Respondent a detailed breakdown of his tax liability.

"On May 19, 1981, the Respondent came to Mr. Russell's office and presented a written statement from his wife regarding the results and a check in the amount of $58.12 to pay his employer's withholding tax liability plus penalty and interest. He stated that he had not yet received a copy of the billing from Annapolis, whereupon Mr. Russell gave him a copy of it.

"On May 27, 1981, the Case Review Board ruled that sufficient grounds existed to pursue criminal prosecution. On June 15, 1981, the Respondent came into Mr. Russell's office and made a payment of $1,500.00 towards the interest and penalty due. This is the last payment which the Respondent has made on the interest and penalties, even though he had requested and been granted a monthly payment plan to pay off the interest and penalties in three monthly installments. (See page 3, paragraph 3 of Petitioner's Exhibit No. 8). The Respondent still owes $2,837.14 to the State of Maryland as of September 29, 1983, on the interest and penalties.

"On September 14, 1981, the Respondent was convicted on two counts of willfully failing to file his State Income Tax returns in violation of Article 81, Section 320 of the Annotated Code of Maryland, for the years 1978 and 1979. (See Petitioner's Exhibit Nos. 1, 2, 3, 4 and 5). Proof of

these convictions through these Exhibits, which convictions are final, constitutes conclusive proof of the guilt of the Respondent of those crimes. Rule BV10(3)(1) and BV1(i) of the Maryland Rules of Procedure. *See Attorney Grievance Commission v. Klauber*, 289 Md. 446, 458–59, 423 A.2d 578, 584 (1981).

"In August, 1977, the Respondent bought a house in the Baltimore area for a purchase price of between $50,000.00 and $55,000.00 and, at that time, made a downpayment of approximately half of the purchase price. Apparently, the Respondent chose to make this downpayment rather than pay his taxes which were due and owing to the State of Maryland at that time for the years 1969 through and including 1976.

"The Respondent's failure to file his State Income Tax Returns in ten out of eleven years between 1969 and 1979, was intentional and willfull, and such failure was accompanied by fraudulent or dishonest intent, as evidenced by the repetitive nature of this misconduct.

## "CONCLUSIONS OF LAW

"1. By willfully and intentionally failing to file his State Income Tax Returns for ten out of eleven years for the tax years between 1969 and 1979, except for tax year 1971, with dishonest or fraudulent intent to cheat the State of Maryland out of taxes, the Respondent violated Disciplinary Rules 1–102(A)(1), (3), (4), (5) and (6); Rule 1230 Appendix F, Maryland Rules of Procedure. *Rheb v. Bar Association of Baltimore City*, 186 Md. 200, 46 A.2d 289 (1946); *Bar Association of Baltimore City v. McCourt*, 276 Md. 326, 347 A.2d 208 (1975); *Attorney General of Maryland v. Walman*, 280 Md. 453 [374] A.2d 354 (1977); *Attorney Grievance Commission of Maryland v. Barnes*, 286 Md. 474, 408 A.2d 719 (1979); and *Attorney Grievance Commission of Maryland v. Gilland*, 293 Md. 316, 443 A.2d 603 (1982).

"2. That the Respondent's failure to pay his State Income Taxes when due for the years mentioned above in

paragraph 1 of these conclusions, other than the taxes which were withheld from his salary while he was employed as an Assistant State's Attorney for Baltimore County, was intentional and willful and for the purpose of evading the payment of the said taxes to the State of Maryland.

"3. That although the crime of willful failure to file income tax returns does not necessarily per se involve moral turpitude, *Attorney Grievance Commission of Maryland v. Barnes,* 286 Md. 474, 408 A.2d 719 (1979); *Attorney Grievance Commission of Maryland v. Gilland,* 293 Md. 316, 443 A.2d 603 (1982), it can involve moral turpitude and, in this case, it does. (See paragraph 1 of these conclusions).

"4. The Respondent was in fact required to file Maryland Income Tax Returns for the tax years 1969 through and including 1979. Title 26, Section 6012 of the United States Code (Petitioner's Exhibit No. 6), and Article 81, Section 294 of the Annotated Code of Maryland.

"5. The offense proscribed by Article 81, § 320 of the Annotated Code of Maryland (1982) involves fraud, deceit, dishonesty and moral turpitude. *Attorney Grievance Commission v. Swerdloff,* 279 Md. 296, [369 A.2d 75] (1977). Therefore, *Attorney Grievance Commission v. Barnes,* 286 Md. 474, [408 A.2d 719] (1979) this Court finds that the Respondent violated DR 1–102(A)(3), by engaging in illegal conduct involving moral turpitude. Additionally, the Court finds that the Respondent by engaging in said conduct, violated: (1) DR 1–102(A)(4), engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; (2) DR 1–102(A)(5), engaging in conduct that is prejudicial to the administration of justice; and (3) DR 1–102(A)(6) engaging in any other conduct that adversely reflects on his fitness to practice law."

Woodward has filed no exceptions, nor did he appear before us with counsel. Bar Counsel has recommended disbarment. Although no exceptions were filed, we have carefully examined the record in this case. There is clear and convincing evidence to support the trial judge's findings

of fact. These findings, in turn, warrant his conclusions of law.

■ Woodward has been convicted of willfully failing to file State income tax returns. Under the circumstances, this willful failure involved not only fraud and dishonest intent, but also moral turpitude. We have consistently held that conduct involving moral turpitude and implicating fraud and deceit will result in disbarment absent compelling extenuating circumstances which justify a lesser sanction. *See, e.g., Attorney Grievance Commission v. Mandel,* 294 Md. 560, 451 A.2d 910 (1982); *Attorney Grievance Commission v. Noren,* 293 Md. 611, 446 A.2d 423 (1982); *Attorney Grievance Commission v. Barnes,* 286 Md. 474, 408 A.2d 719 (1979). No extenuating circumstances for Woodward's conduct have been presented to us, nor do we find any. Therefore, under the circumstances here, disbarment is the proper sanction to be imposed.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOSEPH JANVIER WOODWARD, III.