563 A.2d 387

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Nelson KANDEL.

Misc. Docket (Subtitle BV) No. 28, Sept. Term, 1987.

Court of Appeals of Maryland.

Sept. 12, 1989.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel, for Attorney Grievance Commission of Maryland.

Wilbur D. Preston, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

The Attorney Grievance Commission (Commission), through Bar Counsel, filed a petition for disciplinary action against Respondent, Nelson Kandel (Kandel), alleging eight separate violations of one Disciplinary Rule of the Code of Professional Responsibility.

Pursuant to Maryland Rule BV9b, this Court referred the matter to the Honorable Clifton J. Gordy of the Circuit Court for Baltimore City. After conducting a hearing, Judge Gordy concluded that Kandel, from September 21, 1984 to October 16, 1985, made eight advances of funds, either by cash or check, to Vincent Prescimone (Prescimone). Kandel represented Prescimone in two personal injury claims concerning two different motor vehicle accidents. The advancement of the monies was not made " . . . to advance or guarantee the expenses of litigation" and was therefore unrelated to the costs of litigation.

Judge Gordy concluded:

I find from clear and convincing evidence that these eight (8) advances from [Kandel] to (Prescimone] were in fact for living expenses. These living expenses advanced were in violation of DR 5–103(B). These subject eight (8)

advances considered collectively were not for purposes of 'advancing or guaranteeing the expenses of litigation.'

I find [from] clear and convincing evidence ... that [Kandel] has violated DR 5–103(B) in each instance by advancing Prescimone 'living expenses,' excepting October 16, 1985.

Disciplinary Rule 5–103(B), entitled "Avoiding Acquisition of Interest in Litigation," states:

While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.[1]

Kandel cooperated fully in the disciplinary investigation by responding in detail to discovery measures, by furnishing all exhibits from office files and personal records, and by providing the only testimony at the circuit court hearing. The following summary of the trial judge's factual findings was partially based upon the parties' agreed chronology of events.

### The First Accident

The court below found that Prescimone retained the services of Kandel on September 12, 1984, following a motor vehicle accident the same day. Prescimone saw Dr. Shashi Desai later that day for an initial examination and on twenty-nine subsequent visits for physical therapy and reevaluation. He was released by Dr. Desai on October 31,

---

1.  All references to the disciplinary rules are to Md. Rule 1230, Code of Professional Responsibility, Appendix (1986) unless otherwise indicated. The Code of Professional Responsibility governed the conduct of attorneys in Maryland until January 1, 1987. After that date, the Rules of Professional Conduct apply. Kandel's misconduct occurred before the effective date of the new rules. DR 5–103(B) was later replaced by Rule 1.8(e) of the Rules of Professional Conduct.

1984. Prescimone was also treated by a neurologist, Dr. Steven F. Manekin, M.D., on September 17 and 28, 1984.

According to the chronology, two $100.00 advances in the form of personal business checks were made on September 21, 1984 and October 19, 1984. The purpose of the checks was to assist Prescimone in obtaining repairs to his car in order that he would have means of transportation to the treating physicians' offices. The amounts advanced were not for specific costs, but were to be applied for temporary repairs to keep the car running. Kandel testified that Prescimone told him he could not get to the physicians' offices because the car kept breaking down and he needed money for repairs, gas and oil. Kandel admitted that he neither examined nor verified the damage to the automobile in question. The use of a rental car was deemed not to be an acceptable alternative because of the financial status of the client. He also admitted in testimony that Prescimone may well have been using the vehicle for purposes other than attending physician appointments.

On December 3, 1984, the case was settled for four thousand dollars ($4,000) and settlement funds were disbursed to Prescimone, less the two advances, totalling two hundred dollars ($200), which were deducted from the settlement proceeds.

## The Second Accident

Prescimone was also involved in a second motor vehicle accident on February 28, 1985. He consulted with Kandel on March 1, 1985 regarding possible claims for property damages and physical injuries. Prescimone again was referred to Dr. Shashi Desai whom he saw that day and some forty additional times for physical therapy and treatment. He also saw Dr. Prabhakas Kharod for an orthopedic consultation on March 12, 1985 in Glen Burnie, Maryland.

On March 13, 1985, Prescimone asked Kandel for money, stating that he was indigent, broke, unemployed, ill, and that his automobile was inoperable. Kandel advanced Pres-

cimone $100 cash that day. On March 23, 1985, Prescimone again asked Kandel for money to maintain his automobile in proper running condition in order to have transportation to the doctors and was advanced $100 cash.

A claim for automobile damage incurred in the second accident had been presented to the defendant, Old Dominion Freight Line, Inc. (Old Dominion). A temporary rental automobile was provided by Old Dominion from May 2, 1985 until May 14, 1985. On May 9, 1985, a property damage check in the amount of six hundred thirty-five dollars ($635) was received by Prescimone, but was used to pay rent and other necessities and was not used to repair or replace the car.

Later, on May 23, 1985, Prescimone asked for more money to repair and maintain the automobile in order to get to the physicians' offices. Kandel wrote Prescimone a check for one hundred dollars ($100) that day. On June 17, 1985, Dr. Desai informed Kandel in a written report that Prescimone had been released from treatment. Kandel issued a check for one hundred dollars ($100) on June 25, 1985, ostensibly for transportation to get to his physicians, even though further treatment was unnecessary.

On June 27, 1985, Kandel received from Prescimone's automobile insurance carrier, The Maryland Automobile Insurance Fund (MAIF), a check for Personal Injury Protection (PIP) in the amount of one thousand four hundred ninety-six Dollars ($1,496). Prescimone refused to cash this check and asked Kandel to keep it, unendorsed, in Kandel's file until the case was settled. The check was not negotiated and disbursed until October 25, 1985 when a final accounting and disbursement was made.

Subsequently, on July 29, 1985, Kandel advanced Prescimone another three hundred dollars ($300) by check, with the notation thereon indicating "for expenses." This was done despite the knowledge that Prescimone was no longer under the care of his physicians. He refused to accept any portion of the PIP check being held in Kandel's file. Presci-

mone wanted the PIP check at the time of settlement disbursement. This advance was again purported to be for car repairs and maintenance, although no further medical treatment was necessary. Again, the evidence demonstrated that the funds came from Kandel's personal business account and not from a client's escrow or trust account.

Finally, in September 1985, settlement negotiations began in earnest. On October 3 and 16, 1985, Kandel forwarded two additional checks to Prescimone. On October 3, 1985, a check in the amount of one hundred dollars ($100) was given. On October 16, 1985, a check in the amount of two hundred dollars ($200) was advanced. Kandel considered the two October checks as reasonable advances against the PIP check he was holding. He firmly believed that the monies advanced would be deducted from the PIP funds at the conclusion of the case. On October 16, 1985, Prescimone signed a written release to Old Dominion for the sum of four thousand seventy dollars ($4,070). A settlement sheet was signed on October 25, 1985. Kandel eventually recouped his seven (7) advancements totalling one thousand dollars ($1,000) on October 25, 1985 from the settlement proceeds.

In a disciplinary action, the factual findings of the trial judge are prima facie correct and will not be disturbed on appeal unless determined to be clearly erroneous. *Attorney Grievance Comm'n v. Harris,* 310 Md. 197, 208, 528 A.2d 895, 900 (1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988); *Attorney Grievance Comm'n v. Gilbert,* 307 Md. 481, 490, 515 A.2d 454, 458 (1986); *Attorney Grievance Comm'n v. Kemp,* 303 Md. 664, 674, 496 A.2d 672, 677 (1985) (other citations omitted). Based on our review of the record, we conclude there is clear and convincing evidence sufficient to support the findings and conclusions of the trial judge. We shall adopt the trial judge's conclusion as to eight separate violations of DR 5–103(B). The advancement of funds for medical treatment, or for transportation to a medical office for treatment, is a violation of DR 5–103(B). Monetary advances for

automobile maintenance or repairs is not authorized by the Code. There is no express exception for this type of advancement under the Maryland Code of Professional Responsibility. *See* DR 5–103(B). The monies advanced in the present case were not necessary expenses of litigation.

In fact, Judge Gordy analyzed each advance in relation to the specific status of each case when the advances occurred. When payments of the two advances in the first accident were made, the initial examination had been conducted and it was clear that the monies were used to assist Prescimone in transportation for the express purpose of medical treatments. The trial judge concluded the second two advances, coming about in the second accident, both of which were made in cash, were for transportation expenses related to medical treatment, and were therefore violations. We agree.

The fifth and sixth advances were by check. These were made on May 23 and June 25, 1985. Prescimone had just received a check for six hundred thirty-five dollars and sixty-three cents ($635.63) for the automobile repair settlement. He used the damage repair money for living expenses such as rent and other personal expenses. The subsequent use of the fifth and sixth advances for car expenses was clearly unrelated to litigation expenses.

The seventh and eighth advances were made against the PIP settlement check of fourteen hundred ninety-six dollars and fifty cents ($1,496.50). This check, unendorsed and uncashed, remained in Kandel's possession waiting for a final settlement and accounting. The record supports the conclusion that the monies advanced were from Kandel's personal bank account and, by his own admission, were for car related expenses to "patch" the car. Again, the ultimate purpose of the advance was for transportation for medical treatment. These payments were not for litigation expenses. In fact, medical treatment had also been concluded at the time the last check was written.

The final advance came on October 16, 1985 in the sum of two hundred dollars ($200). This is the ninth

advance at issue. The evidence confirms that the second accident case was settled by telephone on this date. The trial judge concluded that this advance was not a violation because there no longer existed pending litigation. We agree with the trial judge on this point. The case was settled and the final charge was properly dismissed. Bar Counsel took no exceptions.

We turn now to consideration of the appropriate sanction. Disciplinary Rule 5–103(B) is directed at avoiding the acquisition of an interest in litigation through financial assistance to a client. An important public policy interest is to avoid unfair competition among lawyers on the basis of their expenditures to clients. Clients should not be influenced to seek representation based on the ease with which monies can be obtained, in the form of advancements, from certain law firms or attorneys.

Bar Counsel recommends a three month suspension as the appropriate sanction. Kandel's counsel counters that the charges should be dismissed. It is well settled that the severity of the sanction to be imposed depends upon the facts and circumstances of the particular case. *Attorney Griev. Comm'n v. Stancil*, 296 Md. 325, 331, 463 A.2d 789, 791 (1983); *Attorney Griev. Comm'n v. Montgomery*, 296 Md. 113, 120, 460 A.2d 597, 600 (1983). We also consider facts of mitigation as well as an attorney's prior professional history in our assessment. *See Attorney Griev. Comm'n v. Pollack*, 279 Md. 225, 238, 369 A.2d 61, 68 (1977).

We have for our guidance three prior cases involving the improper advance of monies unrelated to the expenses of litigation. *Attorney Grievance Comm'n v. Harris*, 310 Md. 197, 528 A.2d 895 (1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988); *Attorney Grievance Comm'n v. Engerman*, 289 Md. 330, 424 A.2d 362 (1981) and *Bar Ass'n v. Cockrell*, 274 Md. 279, 334 A.2d 85 (1975). In each of these cases, we deemed it appropriate to suspend the attorneys found to have violated DR 5–103(B). It is

significant to note that each case involved other serious violations and no mitigating factors were present. The instant case is the first grievance matter limited solely to the charges under DR 5–103(B).

Here, Kandel was neither charged nor involved in any additional rules violations. Kandel has been licensed in this state since 1954. As a sole practitioner, he has represented numerous clients in a variety of cases and has never been disciplined during the entire thirty-five year period. Under the finding of the trial judge, Kandel was not motivated by self-interest or personal gain in making the advancements to his client. The Court concluded that Prescimone needed the funds due to his financial position and because of the necessity of continuing medical treatment. Prescimone suffered no direct harm or loss due to Kandel's misconduct.

While Kandel here was involved in no other deficiencies, his position is that technically no violation occurred. He also posits that each advancement was for a specific legitimate purpose, and each purpose was related to a pending case. These positions are erroneous.

It is true that under one of the proposed Final Drafts of the Model Rules, an attorney would have been permitted to advance living expenses as well as litigation costs. This Court has not accepted this liberalization of DR 5–103(B). Only costs directly associated with litigation are permissible to be advanced.

Considering all the circumstances in this case, we conclude that the appropriate sanction is a public reprimand.

IT IS SO ORDERED; RESPONDENT TO PAY THE COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE BV15c. FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST NELSON KANDEL.

Concurring and dissenting opinion by RODOWSKY, J., in which McAULIFFE and ADKINS, JJ., join.

RODOWSKY, Judge, concurring in part and dissenting in part.

I concur in the conclusion that respondent, Nelson Kandel (Kandel), violated DR 5–103(B) but not for the reason emphasized by the majority. It is unnecessary in this case to hold that "[t]he advancement of funds for medical treatment, or for transportation to a medical office for treatment, is a violation of DR 5–103(B)." 317 Md. at 279, 563 A.2d at 389. All of Kandel's exceptions challenge fact-findings by Judge Gordy, but those fact-findings are not clearly erroneous. Nor is Judge Gordy's conclusion that Kandel was advancing funds for Prescimone's living expenses, predicated on a legal conclusion which gave an erroneously narrow meaning to "expenses of litigation," within the meaning of DR 5–103(B). This is made abundantly clear by Judge Gordy's finding concerning the cumulative effect of the evidence.

> "The extant pattern was very simple factually: Client would approach Respondent and on each occasion proclaim poverty and request financial assistance. Respondent's response on each and every occasion, regardless of the surrounding circumstances, was to arbitrarily and capriciously set an amount and give money (cash or personal business check) spontaneously to Client. The pattern exposes financial advances from Respondent to Client that are but 'thinly veiled' living expenses, as divulged from the total and complete facts, existing throughout the period complained of.
>
> "I find from clear and convincing evidence that these eight (8) advances from Respondent to Client were in fact for living expenses."

Because there is no need to decide the instant matter on that narrow construction of DR 5–103(B), I would leave the construction issue for some other case in which the issue must be faced squarely.

Further, I dissent from the sanction. Inasmuch as there is a pattern of eight loans made for living expenses over the course of two separate cases, I believe these violations warrant more than a reprimand. Recognizing that the

instant matter does not involve additional violations of other types, *cf. Attorney Grievance Comm'n v. Harris,* 310 Md. 197, 528 A.2d 895 (1987), *cert. denied,* — U.S. —, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988) (six month suspension imposed for violation of several disciplinary rules), and giving due regard to Kandel's many years of practice untainted by any disciplinary violations, I would suspend Kandel for thirty days.

McAULIFFE and ADKINS, JJ., have authorized me to state that they join in this concurring and dissenting opinion.