745 A.2d 1086

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Rena Vaughn ATKINSON.

Misc. AG No. 27, Sept. Term, 1998.

Court of Appeals of Maryland.

Feb. 14, 2000.

Melvin Hirshman, Bar Counsel and James P. Botluk, Asst. Bar Counsel, for the Attorney Grievance Commission of Maryland, petitioner.

Reginald W. Bours, III, Rockville, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

The Attorney Grievance Commission (AGC), through Bar Counsel, charged Rena Vaughn Atkinson, Respondent, with several violations of the Maryland Rules of Professional Conduct, arising out of her failure to pay federal and state income taxes for the years 1986 through 1996. Pursuant to Maryland Rule 16–709(b), we referred the charges to Judge E. Allen Shepherd, of the Circuit Court for Princes George's County, to conduct a hearing and make findings of fact and proposed

conclusions of law. After hearing evidence, Judge Shepherd filed a memorandum opinion in which he made detailed findings of fact and conclusions of law. He concluded that Respondent had violated Maryland Rules 8.4(b), (c) and (d). Rule 8.4 Misconduct reads, in pertinent part, as follows:

It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice....

Respondent filed exceptions to Judge Shepherd's findings of fact and conclusions of law, all of which we shall overrule.

## I.

Following an evidentiary hearing, Judge Shepherd, being persuaded by the clear and convincing evidence presented at the hearing, filed the following findings of fact and conclusions of law:

### *FINDINGS OF FACT*

Respondent is a member of the bar in both the state of Maryland and the District of Columbia. She is a 1983 graduate of the Columbus School of Law, Catholic University of America, where she took courses in income tax law.

After she was admitted to the bar of Maryland in 1984, Respondent worked as an associate with the law firm Deckelbaum, Ogens, and Fisher. While employed with the firm, Respondent filed her tax returns [1] and paid any tax

---

1. Respondent later discovered that although she prepared her tax returns for 1986 and 1987, she failed to mail them.

liability which exceeded the amount the firm had already withheld on her behalf.

Respondent left the firm in 1988, and has been a sole practitioner ever since. Her practice consists mostly of estate and probate work. Her principal office is in the District of Columbia, however, she sometimes works out of her home in Hyattsville, Maryland. She has no employees.

From 1988 to 1996, Atkinson failed to file joint federal and state income tax returns for herself and her husband. With each passing year, Respondent's tax arrearages grew until they had a "snowballing" effect. Respondent knew that she could not afford to pay the back taxes, and therefore did not file the returns. Instead, Respondent allowed the arrearages to mount, and simply avoided the situation. At all times, Respondent was aware that she had a legal obligation to file tax returns.

In 1994, Respondent and her husband went to the Internal Revenue Service (I.R.S.) Office in Largo, Maryland. They received several forms pamphlets from the I.R.S. help desk assistant, but they did not speak with an agent. Nor did Respondent make any other arrangements to meet with an agent at a later date.

Instead, it was the I.R.S. that brought this matter to light. In early 1997, I.R.S. Agent Bill Rush contacted Respondent. Upon Rush's request, Respondent attempted to gather information so that she could prepare tax returns for the years 1988 through 1996. As she went through her papers, Respondent discovered tax returns for the years 1986 and 1987 that had been prepared, but never mailed. In April of 1997, Rush notified the Attorney Grievance Commission of Respondent's failure to file returns and pay taxes. Respondent has since filed [a] return for each year from 1986 through to the present, except for 1988. Respondent was unable to find sufficient documentation to file her return for that year.

The I.R.S. has determined that Respondent owes approximately $93,000 in back taxes and penalties. Respondent has made one payment of $15,546.61 toward that balance.

Respondent has made no other payments toward her federal or state tax arrearages.

During the years in which she failed to file tax returns, Respondent earned as much as $61,000 a year. Due to the nature of her probate and estate practice, however, Respondent's cash flow was irregular. While evidence showed that Respondent has two mortgages on her home and is the primary bread-winner for her family of four, there was no evidence presented that Respondent suffered any extraordinary financial hardship during the years in question. Nor was there any evidence that Respondent suffered from any debilitating physical or mental illnesses or conditions that would have affected her ability to file tax returns or make payments.

## CONCLUSIONS OF LAW

Based upon the foregoing Findings of Fact, the Court finds that Respondent willfully, knowingly, and purposely failed to file income tax returns from 1986 to 1996. The willful failure to file timely income tax returns is a crime. The Court need not find that Respondent actually intended to defraud the government; willful failure is sufficient to constitute a crime. Additionally, willful failure to file income tax returns adversely reflects on the lawyer's fitness to practice law. Therefore, Respondent clearly violated Rule 8.4(b) of the Maryland Rules of Professional Conduct.

The willful failure to file timely income tax returns also violates Rule 8.4(c) of the Maryland Rules of Professional Conduct. The rule states that an attorney cannot engage in any conduct involving dishonesty, fraud, deceit, or misrepresentation. In the case at bar, Respondent knew that she had failed to file tax returns when she went to the I.R.S. office in Largo in 1994. She received information on how to handle the situation, and then again failed to act. Her failure to contact an I.R.S. agent to remedy the situation was, at best, dishonest. Had she been more forthcoming, the "snowballing" effect could have been avoided, or at the very least diminished. The Court finds that Respondent's

inaction violated Rule 8.4(c) of the Maryland Rules of Professional Conduct.

Finally, the Court finds that Respondent violated Rule 8.4(d) of the Maryland Rules of Professional Conduct. Respondent's willful failure to file her federal and state tax returns was prejudicial to the administration of justice. [All footnotes but first omitted.]

## II.

Bar Counsel took no exceptions to Judge Shepherd's findings of fact or conclusions of law, offering only a recommendation as to the appropriate sanction to be imposed. Bar Counsel recommends that Respondent be suspended for a period of three years.

■ Respondent excepts to two of the hearing court's conclusions of law, specifically that her failure to file and pay income taxes violated both subsections (b) and (c) of Rule 8.4.[2]

---

2. Although not disputing the general accuracy of the hearing court's findings of fact, Respondent is not entirely happy with them and excepts to certain omissions which she believes are critical to reaching the proper disposition in this case. Specifically, Respondent excepts to Judge Shepherd's omission in his factual findings that Respondent worked her way through law school as a legal secretary to the firm that eventually hired her as an associate. Also important, but excluded from the findings of fact, she asserts, is the fact that the firm submitted character letters on her behalf, indicating her "honest[y], trustworth[iness] and dependab[ility]," her "great character and integrity," her "reliab[ility], forthright[ness] and [absence of] guile or affectation" and that she is "a hard worker and highly competent attorney."

Also of concern to Respondent is that it be clearly understood that her total tax liability, including fines and penalties related to late filing, as opposed to the actual taxes, was estimated at $93,000. She notes additionally that her offer to the I.R.S. in compromise has been accepted and that she has entered into a payment plan to pay the balance of the settlement amount due.

Respondent takes issue with the hearing court's characterization of her income and financial hardship. She points out that the highest annual income she ever earned was $61,000, a sum that she achieved in the last year she failed to file federal and state returns. Acknowledging the accuracy of the hearing court's finding that she was the primary breadwinner in the family, Respondent wants to make clear that often she was the only breadwinner during the subject period. Moreover,

Respondent concedes that failure to file is conduct prejudicial to the administration of justice and, therefore, that she violated Rule 8.4(d). Respondent maintains, however, that the hearing court incorrectly found that she violated Rule 8.4(b) merely because she failed to file income tax returns. In this regard, she relies primarily on our decision in *Attorney Grievance Comm'n v. Post,* 350 Md. 85, 710 A.2d 935 (1998). As we shall explain, we find *Post* to be significantly distinguishable from the present case.

We first point out that this Court, by Order dated April 15, 1986, adopted the Maryland Rules of Professional Conduct, effective January 1, 1987, along with the comment to each Rule. With respect to failure to file an income tax return, the Comment to Rule 8.4 begins:

> Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return.

---

Respondent excepts to the finding that she suffered no extraordinary financial hardship during the years in question. On the contrary, she maintains:

> There was evidence, through Respondent's testimony, that just when she began to plan on taking measures to correct her failures to file income tax returns, she became pregnant. Respondent worked through both pregnancies and was also solely responsible for considerable daycare expenses immediately after the birth of each child. These factors, combined with her two mortgages, irregular cash flow, and escalating debt to the federal government in back taxes and penalties did, in fact, amount to enormous financial hardship for Respondent.

Our view of these contentions is twofold. We find no fault in the absence from the hearing court's findings of those "facts" Respondent has highlighted before this Court: they are neither dispositive of nor are they crucial to a proper resolution of the present matter. Secondly, the hearing court was not clearly erroneous in finding that Respondent did not suffer extraordinary financial hardship during the period of Respondent's malfeasance. *See Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 292, 614 A.2d 102, 110 (1992). While her role as the family breadwinner, childbearer and primary caretaker is admirable, it is a role played by many a modern attorney, the vast majority of whom has managed to avoid running afoul of the Attorney Grievance Commission. Quite simply, the sharing or even singular bearing of family and professional burdens and enjoyments did not, nor would it now, suffice to excuse Respondent of her tax-filing and tax-paying duties.

Moreover, this Court had previously held, in *Attorney Grievance Comm'n v. Walman*, 280 Md. 453, 374 A.2d 354 (1977),

> That the crime of which respondent stands convicted [— wilfully and knowingly failing to file his federal income tax return for the year 1968 [3]—] represents conduct prejudicial to the administration of justice and, under the particular circumstances of this case, reflects upon his fitness to practice law is beyond debate.

*Id.* at 463, 374 A.2d at 360 (citations omitted). *See also Attorney Grievance Comm'n v. Baldwin*, 308 Md. 397, 407, 519 A.2d 1291, 1296–97 (1987) (noting existence of tax cases involving failure to file that reveal type of disorganized behavior with regard to continuing responsibilities that would alarm any client whose affairs demanded systematic attention).

Turning to our decision in *Post*, the attorney's misconduct there was that he had failed to file withholding income tax returns in a timely manner, to remit the taxes withheld, and to hold the withheld taxes in trust, resulting in his being charged with a violation of Rule 8.4(b). The hearing court, having noted that it did not believe, and that Bar Counsel did not contend, that Post intended to defraud the State Comptroller or the federal authorities, and being unconvinced that Post's conduct adversely reflected on his honesty or trustworthiness, nevertheless concluded that the conduct reflected adversely on his fitness as an attorney, in violation of Rule 8.4(b). *Post*, 350 Md. at 94, 710 A.2d at 939. This Court sustained Post's exception to this conclusion by the lower court. Distinguishing the facts in *Post* from the circumstances in *Walman*, we found it significant that the hearing court found Post's actions not to have compromised his honesty or trustworthiness, instead identifying the attorney's problem as involving office

---

**3.** There were underlying criminal charges against Walman, concerning his failure to file federal tax returns for three consecutive years, specifically 1967–1969. He pled guilty only to the 1968 offense and thus was convicted only of that offense; the United States Attorney nol prossed the remaining charges. *See Attorney Grievance Comm'n v. Walman*, 280 Md. 453, 454, 374 A.2d 354, 355–56 (1977).

management skills rather than his performance or abilities as a lawyer. We explained:

> We do not believe that, *under the circumstances of this case,* that the respondent's conduct "reflects adversely on his fitness as a lawyer." The only basis for the court's conclusion that it does reflect adversely on his fitness as a lawyer is that failure to practice what one preaches undermines one's credibility as a provider of legal counsel. But that is simply another way of saying that the administration of justice may be prejudiced. The court was specific in rejecting any suggestion that, by his actions, the respondent's honesty or trustworthiness was compromised, the conclusion that one could most logically be expected to draw. Moreover, the court also diagnosed the problem as one involving the respondent's office management skills rather than "his performance or abilities as an attorney."

*Id.* at 99, 710 A.2d at 942 (emphasis added)(footnote omitted).

What could be said for Post, however, cannot be said for Atkinson. While frequently failing to pay the withholding taxes due, Post nonetheless had not steered himself completely clear of the taxing authorities. Post continued to withhold taxes from employee wages, kept the necessary records, filed withholding tax returns intermittently, and at times submitted the withheld taxes. Atkinson, on the other hand, purposefully avoided almost all contact with both the state and federal income taxing authorities and at no point exhibited, over a period of eleven years, any real intention to fulfill her duties of filing the required returns and paying the taxes due, until the authorities discovered her delinquency and contacted her.

Secondly, contrary to "the conclusion that one could most logically be expected to draw," *id.,* 710 A.2d at 942, the hearing judge in Post's case concluded that Post's misconduct did not represent any lack of honesty or trustworthiness on his part. In stark contrast, both the hearing judge and the inquiry panel which initially reviewed the present case drew that most logically expected conclusion: Atkinson's misconduct did in fact exhibit a dishonest character. Judge Shepherd

concluded that "[Atkinson's] failure to contact an I.R.S. agent to remedy the situation was, at best, dishonest." Likewise, the inquiry panel determined that Atkinson's conduct "constitutes a criminal act and given the length of time over which this conduct occurred it reflects adversely upon the respondent's honesty, and trustworthiness." Report and Recommendation of Inquiry Panel, March 19, 1998 at 4. While the hearing court did not make a finding that Respondent intended to defraud the taxing authorities, Judge Shepherd found that she "willfully, knowingly, and purposefully failed to file income tax returns from 1986 to 1996," again the willful failure to file being a crime that adversely reflects on a lawyer's fitness to practice law. *See Walman,* 280 Md. at 463, 374 A.2d at 360. Accordingly, Respondent's exception to the hearing court's conclusion that she violated Rule 8.4(b) is overruled.

█ Respondent also excepts to the conclusion drawn by the hearing court that her failure to file income tax returns violated Rule 8.4(c). To arrive at that conclusion, the court relied upon the fact that Respondent, having already failed to file income tax returns for a period of several years, obtained information as to how to correct the situation, but then failed to act on that information. Again, as the hearing judge summed up, "[Respondent's] failure to contact an I.R.S. agent to remedy the situation was, at best, dishonest." In contrast, Respondent contends that a mere failure to file tax returns is not enough to trigger the application of subsection (c); rather, an actual dishonest or fraudulent intent on the part of the deficient taxpayer must be shown. We need not address Respondent's specific contention as to whether such intent need be shown. We think the hearing court correct in characterizing Respondent's particular misconduct as dishonest, if only because of the substantial duration in time over which she failed to pay *both* state and federal income taxes. The repeated failure to file tax returns—particularly when it spans an uninterrupted period of over ten years—is not a minor criminal offense, is a dishonest act, and reflects adversely on a lawyer's honesty, trustworthiness and fitness to practice law. A conviction for tax evasion is not a necessary predicate to

support a finding of dishonesty. We conclude that the hearing court correctly determined that Respondent's failure to fulfill her income tax duties constituted a violation of Rule 8.4(c).

Because we conclude that Respondent's conduct violated Rules 8.4(b), (c) and (d), we shall overrule her exceptions.

## IV.

■ We turn now to the appropriate sanction to be imposed in this case. Bar Counsel recommends an indefinite suspension with the right to reapply after three years. Respondent counters that a reprimand is the appropriate sanction. In mitigation, her counsel presents the following:

> [S]he has been forthcoming and honest during all stages of this investigation and proceedings, showing her respect for the courts. Although her conduct does reflect poorly on the profession, she is committed to resolving her difficulties and continuing her diligent efforts to maintain her growing practice. A suspension of her license will only serve to impair her ability to repay her debts to the federal and state governments.

If, on the other hand, this Court deems a suspension to be appropriate, Respondent suggests that it be "a short finite, or indefinite suspension, with the right to reapply for reinstatement upon settling and paying her tax liabilities."

■ We are mindful that the purpose of sanctions is to protect the public, to deter other lawyers from engaging in violations of the Rules of Professional Conduct, and to maintain the integrity of the legal profession. *Attorney Grievance Comm'n v. Hess*, 352 Md. 438, 453, 722 A.2d 905, 913 (1999). The appropriate severity of a sanction depends upon the facts and circumstances of each particular case. *Attorney Grievance Comm'n v. Kandel*, 317 Md. 274, 281, 563 A.2d 387, 390 (1989). In addition to the facts underlying the misconduct, the attorney's prior grievance history, as well any mitigating factors, are part of the equation. An important consideration in fashioning a sanction for failure to file income tax returns is the intention and motive of the attorney. *Attorney Grievance*

*Comm'n v. Gavin*, 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998); *Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 601, 667 A.2d 659, 665 (1995).

There is little, if any, mitigating evidence in this record. Judge Shepherd found that during the years in which Respondent failed to file state and federal tax returns, she earned $61,000 in at least one year. At the time of oral argument before this Court, she apparently still owed the I.R.S. tens of thousands of dollars in back taxes and penalties. And, although she may have been the family breadwinner during the majority if not the entire period of her tax delinquency, the hearing judge found that she did not suffer from any debilitating physical or mental illnesses or condition that would have affected her ability to file tax returns or to make payments.

Respondent's practice consisted mostly of estate and probate matters, a practice heavily weighted to taxes. We note that Respondent did not file state or federal tax returns for eleven years. By our calculation, considering the requirement of filing quarterly returns, she failed to file over one hundred returns. During this entire period of time, Respondent was aware of the obligation to pay her taxes, but she ignored it. Although the hearing court observed that perhaps one of the reasons Respondent allowed the situation to fester was her knowledge that she could not pay the taxes that were due, such knowledge, while perhaps negating a fraudulent intent, *see Attorney Grievance Comm'n v. Walman*, 280 Md. 453, 462, 374 A.2d 354, 360 (1977), is hardly a legitimate excuse or mitigation. Nor does it diminish the seriousness of the conduct. *See Attorney Grievance Comm'n v. Barnes*, 286 Md. 474, 480, 408 A.2d 719, 723 (1979). As we noted earlier, " 'By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above [the] law.' " *Attorney Grievance Comm'n v. Baldwin*, 308 Md. 397, 408, 519 A.2d 1291, 1297 (1987) (quoting *Walman*, 280 Md. at 465, 374 A.2d at 361).

As mitigation, Respondent points to her cooperation with the I.R.S. to settle the amount due and to reach a payment

plan to discharge the obligation. While we have said that an offending attorney's after-the-fact cooperation with authorities is commendable, nonetheless we have consistently refused to treat such cooperation as a mitigation of the underlying conduct. *See Maryland St. Bar Ass'n v. Callanan*, 271 Md. 554, 557, 318 A.2d 809, 810 (1974); *Attorney Grievance Comm'n v. Casalino*, 335 Md. 446, 452, 644 A.2d 43, 46 (1994). In *Casalino*, we reaffirmed the principle "that a lawyer's cooperation with the authorities *subsequent* to his criminal activity, and then only because it was detected, would not 'serve to palliate the evil of his [or her] offense.'" *Id.*, 644 A.2d at 46 (quoting *Callanan*, 271 Md. at 557, 318 A.2d at 810). As it stands, Respondent and her husband went to the I.R.S. in 1994 and picked up forms, yet she did nothing to rectify the problem and, indeed, never went to the tax authorities voluntarily.

Under the circumstances, we reject Respondent's request that she be reprimanded, believing instead that a period of suspension is required. We also find Bar Counsel's recommendation based on *Walman* inappropriate because we find *Walman* to be distinguishable. Walman had two prior disciplinary actions against him, as well as a criminal prosecution and conviction for the charges underlying the attorney grievance action. Along similar lines, we stated in *Baldwin* the following as our rationale in imposing an eighteen month suspension:

Although Baldwin's flouting of the law with respect to withholding did not result in a criminal prosecution, it does involve six years within a period of seven consecutive years. Moreover, Judge Fader found that there were no extenuating circumstances in Baldwin's case. For example, Baldwin's alcoholism did not cause him to fail to file returns and pay taxes.

In Walman's case there was a criminal conviction, the failure to file, involving three years, [which] was not fraudulent, and there were no mitigating circumstances. We suspended Walman for three years. In *Attorney Grievance Commission v. Gilland*, 293 Md. 316, 443 A.2d 603 (1982),

the attorney was convicted of failing to file federal income tax returns for three years for which he was sentenced to two months imprisonment, a one year suspended sentence, and a fine of $10,000. Gilland had no fraudulent intent but it was found that he had violated DR 1–102(A)(5). There were mitigating circumstances. We suspended Gilland for two years. If the failure to file is accompanied by an intention to cheat the government and fellow citizens by avoiding the payment of substantial taxes justly due, and absent extenuating circumstances, the proper sanction is disbarment. *See Attorney Grievance Commission v. Woodward,* 299 Md. 429, 474 A.2d 208 (1984) and *Attorney Grievance Commission v. Barnes,* 286 Md. 474, 408 A.2d 719 (1979).

*Baldwin,* 308 Md. at 408, 519 A.2d at 1297. In contrast, this proceeding is Respondent's first disciplinary action, and Respondent was not charged in a criminal prosecution.

Weighing all of these factors, we conclude that the appropriate sanction is an indefinite suspension with the right to reapply after the expiration of one year, accounting from thirty days from the filing of this opinion. Atkinson shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

*IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST RENA VAUGHN ATKINSON. RESPONDENT'S SUSPENSION SHALL COMMENCE THIRTY DAYS FROM THE FILING OF THIS OPINION.*

BELL, Chief Judge, dissenting:

I dissent. In overruling the respondent's exceptions to the hearing court's finding that she violated Maryland Rule of Professional Conduct 8.4(b) and (c), the majority has taken an act of omission—the failure to file personal income taxes—and

held, without any evidence that the act of omission has impacted the respondent's practice of law, that it also reflects adversely on her fitness to practice law and was conduct involving dishonesty. Notwithstanding the majority's protestations characterizing its action as distinguished from the present case, to reach the result it does requires overruling part of the recent case of *Attorney Griev. Comm'n v. Post*, 350 Md. 85, 710 A.2d 935 (1998),which addressed Rule 8.4(b) and found it to be inapplicable. Moreover, the majority must rely on *Attorney Griev. Comm'n v. Walman*, 280 Md. 453, 374 A.2d 354 (1977) and give it a significance it does not have.[1] Finally, the result the majority mandates in this case creates the anomalous situation in which a failure to file that has, and, indeed, could have no adverse impact on anyone except the taxpayer is treated more harshly than one, often occurring without considering its impact on innocent third parties, that affects, and potentially could adversely impact, such persons.

In maintaining that the hearing court incorrectly found that she violated Rule 8.4(b) merely because she failed to file income tax returns, the respondent relies primarily on our decision in *Post*. In that case, Post had failed timely to file withholding income tax returns, to remit the taxes withheld, and to hold the withheld taxes in trust, as required by § 10–

---

**1.** The majority cites *Attorney Griev. Comm'n v. Baldwin*, 308 Md. 397, 407–08, 519 A.2d 1291, 1296–97 (1987) for the propositions, "existence of tax cases involving failure to file ... reveal type of disorganized behavior with regard to continuing responsibilities that would alarm any client whose affairs demanded systematic attention" and " 'By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above [the] law.' " (quoting *Attorney Griev. Comm'n v. Walman*, 280 Md. 453, 464–65, 374 A.2d 354, 361 (1977)). 357 Md. 646, 657, 745 A.2d 1086, 1092 (2000). Neither is apposite or assists the majority's analysis. Both address perception. An unfavorable perception prejudices the administration of justice. It does not, however, prove that the conduct giving rise to the perception involves dishonesty or adversely affects the fitness of the person engaging in it to practice law. That inquiry is a more narrowly focused one and requires facts addressing those specific circumstances. No such focus or facts were presented, or even attempted, in this case. All that the petitioner showed in this case, or attempted to show, for that matter, is that the respondent did not file her personal income tax returns.

906, Maryland Code (1957, 1999 Replacement Volume) of the Tax General Article,[2] resulting in his being charged with a violation of Rule 8.4(b). The hearing court, having noted that it did not believe, and Bar Counsel did not contend, that Post intended to defraud the Comptroller or the federal authorities, and being unconvinced that the conduct adversely reflected on his honesty or trustworthiness, nevertheless concluded that the conduct reflected on his fitness as an attorney, reasoning:

"[o]ne of the most fundamental of a lawyer's functions is to give sound legal counsel to his or her clients, meaning that he or she must, when called upon to do so, advise the clients of their various lawful rights and duties, and concomitantly is bound to urge them to comply with those legal duties. An attorney, almost without regard to his reasons therefor, who does not 'practice' what he or she is required to 'preach' surely diminishes the stature and fitness of his role as a provider of legal counsel. Therefore, notwithstanding a degree of sympathy which Respondent's quandary may create, it cannot be doubted that his conduct reflected adversely on his fitness as a lawyer and, consequently, that he is in violation of Rule 8.4(b)".

*Id.* at 94, 710 A.2d at 939. This Court sustained Post's exception. We explained:

"We do not believe that, under the circumstances of this case, that the respondent's conduct 'reflects adversely on his fitness as a lawyer.' The only basis for the court's conclusion that it does reflect adversely on his fitness as a lawyer

2.  As relevant, § 10–906 provides:

"(a) Except as provided in § 10–907 of this subtitle, each employer or payor shall:

"(1) withhold the income tax required to be withheld under § 10–908 of this subtitle; and

"(2) pay to the Comptroller the income tax withheld for a period with the withholding return that covers the period.

"(b) Any income tax withheld is deemed to be held in trust for the State by the employer or payor who withholds the tax.

"(c) An employer or payor who withholds income tax shall keep a separate ledger account for withholdings that indicates clearly:

"(1) the amount of income tax withheld; and

"(2) that the income tax withheld is the property of the State."

is that failure to practice what one preaches undermines one's credibility as a provider of legal counsel. But that is simply another way of saying that the administration of justice may be prejudiced. The court was specific in rejecting any suggestion that, by his actions, the respondent's honesty or trustworthiness was compromised, the conclusion that one could most logically be expected to draw. Moreover, the court also diagnosed the problem as one involving the respondent's office management skills rather than 'his performance or abilities as an attorney.' "

*Id.* at 99, 710 A.2d at 942 (footnote omitted). We had earlier addressed what was required to be shown to prove a violation of Rule 8.4(b):

"Rule 8.4(b) recognizes, by its reference to character traits, rather than enumerating specific crimes, that commission of some crimes evidence[s] or demonstrate[s] a character flaw that, were the person committing them applying for admission to the bar, would constitute a significant impediment, if not outright prohibition, to his or her admission or, having been admitted, could result in his or her disbarment. The rule identifies two such traits. In addition to those traits, however, it includes as a catchall object, 'fitness as a lawyer in other respects.' Since the Rule is specific in the requirement that the criminal act reflect adversely on the character traits or fitness as a lawyer, it follows that what the Rule contemplates is that the criminal act evidence another character trait, which, like honesty and trustworthiness, is relevant or critical to the practice of law."

*Id.* at 97, 710 A.2d at 941.

Conceding, in this case, that the hearing court did not make a finding that the respondent intended to defraud the "government," to the majority, as to the hearing court, it is enough that the respondent "willfully, knowingly, and purposefully failed to file income tax returns from 1986 to 1996," the willful failure to file being a crime that adversely reflects on a lawyer's fitness to practice law. The majority relies on *Attorney Griev. Comm'n v. Walman,* 280 Md. 453, 374 A.2d 354

(1977), which to be sure, does stand for the proposition for which the hearing court cited it, *i.e.* "Willful failure to file income tax returns adversely reflects on the lawyer's fitness to practice law," *see id.* at 463, 374 A.2d at 360 ("the crime of which respondent stands convicted represents conduct prejudicial to the administration of justice and, under the particular circumstances of this case, reflects upon his fitness to practice law is beyond debate"). It must be remembered, however, that *Walman* was prosecuted for, and convicted, of a crime, 26 U.S.C. § 7203, which, although not requiring proof of intent to defraud and to evade payment of taxes, required proof beyond a reasonable doubt of a voluntary, intentional violation of a known legal duty and that the failure to file was not through accident or mistake or other innocent cause. *Id.* at 461, 374 A.2d at 359. While the hearing court may have concluded by clear and convincing evidence that the respondent failed to file, it is to me significant that the respondent has neither been prosecuted nor convicted of any such crime. In that regard, I think it quite telling that, although referring quite specifically to "the particular circumstances of this case," *Walman* identified only the conviction, and no other circumstance, to explain the Court's conclusion that failing to file adversely reflected on Walman's fitness to practice law.[3]

Noting a distinction between *Post* and *Walman*—"while frequently failing to pay the withholding taxes due, Post nonetheless had not steered himself completely clear of the taxing authorities. Post continued to withhold taxes from employee wages, kept the necessary records, filed withholding taxes intermittently, and at times submitted withheld taxes"—

---

**3.** As the majority points out, Walman was charged with three counts of failure to file and pled guilty to one of those counts. *Attorney Griev. Comm'n v. Walman*, 280 Md. 453, 454, 374 A.2d 354, 355–56 (1977). As a result of the guilty plea, he was sentenced to imprisonment for 1 month and placed on 23 months probation. *Id.* Shortly thereafter, he was disbarred by the United States District Court for the District of Maryland. Certainly, the sentence he received adversely impacted, at least for the period of the sentence, Walman's fitness to practice law. *See, In the Matter of the Application of Dortch*, 344 Md. 376, 687 A.2d 245 (1997). So too could his disbarment.

the majority asserts that there is no such distinction between the respondent and Walman, stating that the respondent "purposefully avoided almost all contact with both the state and federal income taxing authorities." To the majority, it is also significant that this Court in *Post* commented that the hearing court in that case did not conclude "that, by his action, the respondent's honesty or trustworthiness was compromised, the conclusion that one could most logically be expected to draw," while, in this case, both the hearing court and the Inquiry Panel did.

I have already responded to the first point, that the respondent, unlike Walman, has neither been prosecuted nor convicted of any crime, not even the wilful failure to file and, thus, in that respect this case is in fact distinguishable from *Walman*. As to the second point, the majority fails to appreciate the context in which the statement was made. The failure to file withholding tax returns or pay employee withholding taxes is "directly related to the operation of [a] law practice," *Matter of Discipline of Johnson*, 414 N.W.2d 199, 202 (Minn.1987), but more than that, may be directly relevant to a lawyer's honesty and trustworthiness. Because withholding taxes are paid on behalf of the lawyer's employees and is an obligation placed on the employer, how the lawyer handles that responsibility is an important consideration in assessing his fitness; it "may well reflect upon the seriousness with which [a lawyer] regards his professional obligation in handling other people's money." *Id.* In the context of withholding tax returns and taxes, one could much more likely conclude from the circumstances surrounding their payment and the filing of the returns that the lawyer's honesty and trustworthiness had been compromised, than from the failure of the lawyer to file or pay his or her personal returns.

I remain satisfied that *Post* enunciates the proper standard. Applying the *Post* rationale—the conduct must involve a character trait which, like honesty and trustworthiness, is relevant to the practice of law—produces a clear result. While it is true that the respondent failed to file the income tax returns, there are no circumstances other than that failure from which

it can be determined that the respondent's conduct adversely reflected upon her fitness as a lawyer; the only basis upon which it could be inferred that the respondent's fitness as a lawyer is compromised is her failure to file the returns and pay the taxes due. In the absence of evidence of something more than a failure to file and in the face of evidence attesting to the respondent's fitness to practice law, there simply is no basis for the hearing court's conclusion that the respondent violated Rule 8.4(b).

The hearing court, relying on the fact that the respondent, having already failed to file, obtained information as to how to correct the situation, but then failed to act on that information, also concluded that the respondent's failure to file income tax returns likewise violated Rule 8.4(c). As the court put it, "[h]er failure to contact an IRS agent to remedy the situation was, at best, dishonest." The majority overrules the respondent's exception, asserting that "the substantial duration in time over which she failed to pay both state and federal income taxes" suffices as justification for the hearing court's conclusion.

Neither *Attorney Griev. Comm'n v. Casalino,* 335 Md. 446, 644 A.2d 43 (1994) nor *Attorney Griev. Comm'n v. Clinton,* 308 Md. 701, 521 A.2d 1202 (1987), which the hearing court cited as authority, supports that conclusion. As the respondent points out, neither *Casalino* nor *Clinton* held that the failure to file tax returns is conduct involving dishonesty, fraud, deceit or misrepresentation. Indeed, in both cases, the respondent had been convicted of tax evasion. It is well settled that, while tax evasion is a crime involving dishonesty, fraud, deceit or misrepresentation, it is distinguishable, and has been distinguished, from willful failure to file. *See Walman,* 280 Md. at 462, 374 A.2d at 360. The respondent argues that "Judge Shepherd's statement that '[the respondent's] failure to contact an IRS agent to remedy the situation was, at best, dishonest' is a conclusion not supported by the facts or the statutory scheme, which makes failure to file a crime. Dishonesty is not an element of the failure to file at the state

or the federal level." I agree and, thus, I would sustain the respondent's exception.

As the appropriate sanction to be imposed, the majority settles upon an indefinite suspension with the right to apply for readmission after one year. Believing that sanction to be unduly harsh, even punitive, under the circumstances, I dissent from the sanction as well.

It is well settled that: " 'conduct prejudicial to the administration of justice,' delegates or confirms to the courts the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence." *Rheb v. Bar Ass'n of Baltimore,* 186 Md. 200, 205, 46 A.2d 289, 291 (1946). Moreover, the purpose of attorney discipline is the protection of the public and not punishment of the attorney. *See Attorney Griev. Comm'n v. Gittens,* 346 Md. 316, 697 A.2d 83 (1997); *Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 431 A.2d 1336 (1981); *Attorney Griev. Comm'n v. Bailey,* 286 Md. 630, 408 A.2d 1330 (1979). And the "severity of sanctions depends upon the facts and circumstances of the particular case." *Attorney Griev. Comm'n v. Kandel,* 317 Md. 274, 281, 563 A.2d 387, 390 (1989). The attorney's prior grievance history, as well as facts in mitigation, constitute part of those facts and circumstances. *Attorney Griev. Comm'n v. Franz,* 355 Md. 752, 762–63, 736 A.2d 339, 344 (1999); *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975). "One of the most relevant considerations in determining a sanction for failure to file income tax returns is the intention and motive of the respondent." *Attorney Griev. Comm'n v. Breschi,* 340 Md. 590, 601, 667 A.2d 659, 665 (1995).

The length of time during which the respondent failed to file tax returns and pay the taxes due is very troublesome. So, too, is the fact that, during the entirety of that time, the respondent was aware of the obligation, but simply let things continue to snowball. Although indicating that the respondent did not have any extraordinary financial hardships during the

period in question, the hearing court acknowledged that perhaps one of the reasons the respondent allowed the situation to fester was her knowledge that she could not pay the taxes due. That fact negates a fraudulent intent, although it does not diminish the seriousness of the conduct. *Walman,* 280 Md. at 462, 374 A.2d at 360. *See Attorney Grievance Commission v. Barnes,* 286 Md. 474, 480, 408 A.2d 719, 723 (1979)("Unlike Walman, Barnes did not attribute his failure to file to an inability to pay his taxes, although notwithstanding his substantial income in 1969 and 1970, he did say, without elaboration, that he was under a financial strain during those years."). Also, as in *Walman,* no evidence has been presented to show that the respondent's failure to file the returns was accompanied by a fraudulent or dishonest intent or an intent to avoid the ultimate payment of taxes. Indeed, as the respondent points out, "[her] behavior in response to the investigation reveals that she had no intention to conceal, or misrepresent her obligation to file or pay taxes." Moreover, the respondent was, for the entire period, the primary, and at times, the sole, breadwinner for the family, even when pregnant with her two children.

Although the obligation has not been discharged, the respondent has cooperated with the IRS to settle the amount due and to reach a payment plan to discharge the obligation. That has now been accomplished and the respondent professes to be prepared to meet her responsibility under that agreement. It is also significant that neither the IRS nor the Maryland Comptroller has prosecuted her for the failure to file. Finally, the respondent has not previously been disciplined and has had no prior disciplinary complaints lodged against her.

Under the circumstances, I believe the appropriate sanction to be an indefinite suspension with the right to apply for readmission after 60 days.

Judges ELDRIDGE and CATHELL join in the views herein expressed.