910 A.2d 429

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Andrew M. STEINBERG.

Misc. Docket AG No. 48, Sept. Term, 2005.

Court of Appeals of Maryland.

Nov. 6, 2006.

340

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel), Attorney Grievance Com'n of Maryland, for Petitioner.

Andrew M. Steinberg, Springfield, VA, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, Judge.

The Attorney Grievance Commission ("Petitioner"), acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action (the "Petition") against Andrew M. Steinberg ("Respondent"), alleging violations of the

Maryland Rules of Professional Conduct ("MRPC") in his representation of two former clients. The first set of allegations arise from his representation of Christine A. Serabian in a will caveat proceeding,[1] for which Respondent is charged with violations of MRPC 1.1 (Competence),[2] 1.2 (Scope of Representation),[3] 1.3 (Diligence),[4] 1.4 (Communication),[5] 1.5 (Fees),[6] 1.8 (Conflict of Interest: Current Clients: Specific

---

1. The Petition for Disciplinary or Remedial Action, filed on 11 October 2005 by Bar Counsel, actually contains three complaints. The first two arise out of the same matter. Both Respondent's client, and George E. Meng, Esquire, Respondent's opposing counsel in the will caveat proceeding, filed complaints against Respondent.

2. MRPC 1.1 mandates that:
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

3. MRPC 1.2 provides, in relevant part, that:
(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. . . . A lawyer shall abide by a client's decision whether to accept and offer of settlement of a matter.

4. MRPC 1.3 requires that:
A lawyer shall act with reasonable diligence and promptness in representing a client.

5. MRPC 1.4 provides, in relevant part, that:
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests of information; and
\* \* \* \* \*
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

6. MRPC 1.5(c) states:
A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percent-

Rules),[7] 1.16 (Declining or Terminating Representation),[8] 3.2 (Expediting litigation),[9] 3.4 (Fairness to Opposing Party and Counsel),[10] 4.1 (Truthfulness in Statements to

age or percentages that shall accrue to the lawyer in the even of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before of after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be responsible whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination.

7. MRPC 1.8(h) provides:

A lawyer shall not:
(1) make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement; or
(2) settled a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel in connection therewith.

8. MRPC 1.16 states, in relevant part, that:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
\* \* \* \* \*
(3) the lawyer is discharged.
\* \* \* \* \*
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating the client to the extent permitted by other law.

9. MRPC 3.2 provides:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

10. MRPC 3.4 provides, in relevant part, that:

A lawyer shall not:
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

others),[11] 8.1 (Bar Admission and Disciplinary Matters),[12] and 8.4 (Misconduct).[13] In the second matter, Bar Counsel charged Respondent with violations of MRPC 1.1 (Competence), 1.2 (Scope of Representation), 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 3.1 (Meritorious Claims and Contentions),[14] 3.2 (Expediting litigation), 3.3 (Candor Toward the Tribunal),[15] 8.1 (Bar Admission and Disciplinary Matters),[16] and 8.4 (Misconduct) in the course of Respondent's represen-

---

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

**11.** MRPC 4.1(a) provides, in relevant part, that:
In the course of representing a client a lawyer shall not knowingly:
(1) make a false statement of material fact or law to a third person.

**12.** MRPC 8.1 compels, in relevant part, that:
... [A] lawyer in connection with a ... disciplinary matter shall not:
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**13.** MRPC 8.4 provides, in pertinent part:
It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;

**14.** MRPC 3.1 provides:
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a good basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

**15.** MRPC 3.3 provides, in relevant part, that:
(a) A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal;

**16.** MRPC 8.1 requires that:
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact;

tation of Ms. Annie Adeleye in efforts to avoid the foreclosure sale of her home. Pursuant to Maryland Rule 16–752(a), we referred the matter to the Honorable Eric M. Johnson of the Circuit Court for Montgomery County to conduct an evidentiary hearing and render findings of fact and recommended conclusions of law.

## I. Procedural History

Respondent was served personally with the Petition and a Writ of Summons on 3 November 2005, directing him to respond to the charges within 15 days following the date of service.[17] Also included among the papers served on Respondent at the same time were a Request for Production of Documents, Interrogatories, and a Request for Admissions. The Affidavit of Service filed in the record indicates that all of these documents were served by Dennis F. Biennas, an employee of Petitioner. Respondent failed to answer the Petition, and an order of default was entered on 9 December 2005.[18]

Respondent filed a Motion to Vacate Default Judgment on 6 January 2006. The matter was set for hearing on 11 January 2006. Respondent failed to appear. At that time, the hearing judge scheduled an *ex parte* hearing for 2 March 2006 when Petitioner would be permitted to present testimony in support of the Petition. The Respondent also failed to appear at this hearing. Finding the reasoning in Respondent's motion unpersuasive, the hearing judge denied the Motion to Vacate and allowed Petitioner to make an evidentiary record regarding the complaints.

---

**17.** Maryland Rule 16–754(a) provides that "[w]ithin 15 days after being served with the petition, unless a different time is ordered, the respondent shall file with the designated clerk an answer to the petition and serve a copy on the petitioner. Sections (c) and (e) of Rule 2–323 apply to the answer. *Defenses and objections to the petition, including insufficiency of service, shall be stated in the answer and not by preliminary motion.*" (emphasis added).

**18.** Maryland Rule 16–754(c) states that "[i]f the time for filing an answer has expired and the respondent has failed to file an answer in accordance with section (a) of this Rule, the court shall treat the failure as a default and the provisions of Rule 2–613 shall apply."

On 8 May 2006, Judge Johnson filed written findings of facts and conclusions of law. Petitioner filed with this Court timely Exceptions to the Findings of Fact and Conclusions of Law. Respondent filed Exceptions on 26 May 2006, 3 days after the deadline for doing so.[19] Petitioner filed a Motion to Strike (based on the late filing) and Response to Respondent's Exceptions.

## II. Findings of Fact[20]

### Complaint of Christine A. Serabian.

Respondent was retained in March 2003 to represent Ms. Serabian in a will caveat proceeding in Calvert County. The representation was undertaken pursuant to a contingency fee agreement whereby Respondent was to receive an hourly fee if a recovery was obtained. This fee agreement was *not* reduced to writing.

In the course of the representation, Steinberg "not only failed to communicate with his client for extended periods of time,[21] but also failed to appear at scheduled meetings and deposition with his client in June, September, and October of 2003." According to Ms. Serabian's complaint, these omissions included failing to appear at a previously scheduled

---

**19.** Maryland Rule 16–758(b) provides that "[w]ithin 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition . . . ."

**20.** Other than two exceptions taken by Petitioner bearing on the hearing judge's fact-finding, which we shall discuss and resolve later, there were no other exceptions mounted by either party to the facts supplied in Part II of this opinion.

**21.** For example, Ms. Serabian testified at her deposition that after the cancellation of the 13 November 2003 deposition, opposing counsel and Ms. Serabian made tentative dates for rescheduling the deposition on either 22 January or 29 January 2004. In the meantime, Ms. Serabian sent a fax to Respondent in order to schedule a meeting on or about 16 November 2003 to discuss the case. This meeting never occurred, and Respondent never notified Ms. Serabian of the final date of the rescheduled deposition. She missed the deposition and, as a result, had significant sanctions leveled against her by the Orphans' Court.

meeting with her and arriving an hour late each for two court-ordered mediation sessions, and being unprepared for the latter one. Respondent also failed to explain the outcome of court-ordered mediation sessions, and failed to present to Ms. Serabian the content of an offer made by opposing counsel during the mediation process.[22]

The most glaring deficiency in Respondent's representation occurred in the days surrounding the 13 November scheduled deposition of Ms. Serabian. The deposition was scheduled for 13 November 2003 at the office of George E. Meng, Esquire, opposing counsel. On 12 November 2003, at approximately 5:15 p.m., Respondent called Mr. Meng and informed him that Ms. Serabian "refused" to attend the deposition. This was a misrepresentation. After protracted dialogue with Respondent, Meng requested that Steinberg attempt to procure his client's attendance at the deposition. Around 10:10 p.m., Steinberg informed Meng that his client's position had not changed. Mr. Meng cancelled the deposition. The next day, Ms. Serabian arrived at Meng's office at the scheduled time to be deposed. She professed to have no knowledge of the cancellation and had not represented to Respondent that she refused to attend the deposition as scheduled.

The deposition was rescheduled between counsel to 22 January 2004. Despite Respondent's knowledge of the new date, he did not communicate the new date to Ms. Serabian. When she failed to appear on 22 January, the Orphans' Court presiding over the caveat proceeding, upon opposing counsel's motion, directed her to pay various monetary sanctions to the opposing parties, and scheduled a further hearing to allow the personal representative and legatees to present *ex parte* proof concerning the testator's competency and lack of undue influence relating to the execution of the challenged will.

"Following an inexplicable lack of communication with his client, Ms. Serabian finally terminated the Respondent's rep-

---

**22.** According to Ms. Serabian, Respondent presented the offer made by opposing counsel to her brother, Michael Serabian, but failed to properly explain the offer to her directly.

resentation in or about February 2004. Despite his termination, and despite repeated requests by Ms. Serabian to have her file returned to her, Respondent failed to timely withdraw his appearance and failed to timely return Ms. Serabian's file after his discharge." Respondent made repeated representations to Ms. Serabian and opposing counsel that he filed the motion to withdraw before he actually did. Respondent's motion to strike his appearance was not filed until 13 August 2004, approximately 6 months after termination of the representation. Additionally, Ms. Serabian made several attempts over the following months to obtain the files relating to her ongoing case, including several phone calls to Respondent, all going unreturned. It was not until Respondent received a letter from the Petitioner, requiring that he return the file, that Steinberg finally complied.

Lastly, in a document dated 5 October 2004, Respondent sought to have Ms. Serabian execute a release of any malpractice claims, and to have her withdraw her disciplinary complaint in this matter. After termination of Steinberg's representation, Ms. Serabian continued *pro se* to pursue the caveat and, in that capacity, sought reconsideration of the *ex parte* sanctions entered against her as a result of the deposition debacle. In connection therewith, she sought an affidavit from Respondent stating that he never informed her of the 22 January rescheduled deposition date. When she arrived at his house to obtain the affidavit, he presented her with a "Release in Full," which purported to release Respondent from any liability arising out of his representation of her in the will caveat. Steinberg neither advised her to obtain independent legal advice with respect to signing this document nor did he provide any reasonable opportunity to do so.

*Complaint of George E. Meng, Esquire.*

George E. Meng, Esquire, represented the personal representative throughout the bulk of the will caveat proceeding in opposition to Ms. Serabian. On 12 March 2003, Meng initially learned that Respondent represented Ms. Serabian and her brother. He attempted to contact Respondent in order to

discuss the case. Respondent did not answer his phone. After the voice message he left went unreturned, Meng left another detailed voice message on 18 March 2003 concerning a Status Conference in the Orphans' Court scheduled for 23 April 2003. When Respondent did not respond timely to that message, the Status Conference date was confirmed without Steinberg's input. Respondent finally placed a return phone call in response to Meng's voice mail messages on 23 March 2003.

After attempts failed at mediation of the caveat proceeding, Meng attempted to contact Steinberg on 8 July, 15 July, and again on 10 September 2003, in order to schedule depositions, including the deposition of Ms. Serabian. In addition to repeated phone calls, Mr. Meng sent a letter on 17 September 2003 outlining potential dates for the depositions. He received no response from Respondent, and Ms. Serabian's deposition was noted for 22 October 2003, again without the input of Steinberg.

On the eve of the scheduled 22 October 2003 deposition, Steinberg faxed Meng and counsel for the legatees, stating that "... due to unforeseen circumstances, [Respondent was] unavailable for the deposition scheduled ... for October 22 of 2003." Based on this cryptic message, the deposition was rescheduled for 13 November 2003. Meng did not hear from Steinberg again until the 12 November 2003 misrepresentations previously discussed in the findings of fact as to Ms. Serabian's complaint.

Respondent informed Meng on 9 February 2004 that he had been discharged by Ms. Serabian. In addition to Ms. Serabian's repeated requests to Respondent to strike his appearance, Mr. Meng also made several attempts to urge Steinberg to file a formal Motion to Withdraw. Despite repeated efforts, including calls directed to Respondent on 9 February, 19 February, 16 March, 18 March and again on 8 June, Respondent did not initiate action to withdraw his appearance. On June 8, Meng finally was able to reach Respondent, at which time Respondent misrepresented to him that a Motion to

Withdraw had been filed. As noted earlier, the motion was not filed until 13 August 2004.

*Complaint of Annie M. Adeleye.*

Annie M. Adeleye retained Respondent on 9 April 2003 to represent her in efforts to avoid the foreclosure sale of her home. The representation was secured by an advance fee in the sum of $1,000.00. Respondent was to file a Chapter 13 Bankruptcy Petition in order to protect the home. Respondent subsequently represented to Ms. Adeleye that he had filed the petition when, in fact, he had not. Ms. Adeleye received a letter from the law firm conducting the foreclosure sale notifying her that the sale would be held on 29 May 2003. She informed Respondent of the foreclosure sale date in a telephone call and, accompanied by her brother, visited Respondent's law office with the letter in order to confirm with Steinberg the sale date. Steinberg again assured Adeleye that he had filed the petition and that her house would be protected from the impending sale.

Respondent neither filed the Chapter 13 Petition nor took any other preventative action to forestall the foreclosure sale. The day following the sale, Steinberg filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division, without the consent or the signature of his client. Respondent took no further action on behalf of Ms. Adeleye until 1 October 2003, four months following the sale, when he filed in the Circuit Court for Prince George's County a "Motion to Reconsider Ratification and Confirmation of Trustees Sale and to Set Aside Sale of May 29, 2003." Respondent supported this Motion by asserting falsely that his client did not receive notice of the foreclosure sale.

### III. Factual Exceptions

The hearing judge entered an order of default, at Petitioner's request, when Respondent failed to file a responsive pleading to the Petition. Pursuant to Maryland Rule 16–

754(c),[23] failure to file a timely response may be treated as a default. Under Maryland Rule 2–323(e),[24] the averments set forth in the Petition are deemed admitted unless denied in a timely responsive pleading. In this case, because the averments in the Petition were not denied by Respondent in a timely filed responsive pleading, the averments and the testimony from the *ex parte* hearing were treated properly as admitted. *See Attorney Grievance Comm'n v. Lee,* 390 Md. 517, 523–24, 890 A.2d 273, 277 (2006).

This Court conducts an independent review of the record and generally accepts a hearing judge's findings of fact unless we determine that they are clearly erroneous. *Lee,* 390 Md. at 524, 890 A.2d at 277; *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006); *Attorney Grievance Comm'n v. Stolarz,* 379 Md. 387, 397, 842 A.2d 42, 47 (2004); *Attorney Grievance Comm'n v. Culver,* 371 Md. 265, 274, 808 A.2d 1251, 1256 (2002); *Attorney Grievance Comm'n v. Harrington,* 367 Md. 36, 49, 785 A.2d 1260, 1267 (2001)("The 'hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous.' ") (internal citations omitted); *see also* Md. Rule 16–759(b)(2)(B) ("This Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."). After a thorough review of the record, we find that, to the extent not challenged by the parties, the hearing

---

**23.** Maryland Rule 16–754(c) provides that if the time for filing a response to the Petition has expired, the court shall treat the failure as a default, and further states that the rules on default, found in Title 2, chapter 600 of the Maryland Rules shall apply.

**24.** Maryland Rule 2–323(e) provides:

Effect of failure to deny. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted unless denied in the responsive pleading or covered by a general denial. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided. When appropriate, a party may claim the inability to admit, deny, or explain an averment on the ground that to do so would tend to incriminate the party, and such statement shall not amount to an admission of the averment.

judge's findings of fact are not clearly erroneous, as they are supported by the record evidence adduced during the proceedings.[25]

## A.

### *Exceptions filed by Petitioner.*

Petitioner in this case challenges Judge Johnson's findings as to Ms. Serabian's actual knowledge of the scheduling of the 13 November 2003 deposition in Mr. Meng's office. Specifically, the hearing judge found that Ms. Serabian was not apprised of the date and time of the deposition. Ms. Serabian testified at the *ex parte* hearing that, while visiting her daughter in Hampton, Virginia, on 12 November 2003, she checked her telephone messages around midnight. She stated that Respondent left a message at approximately 5:15 p.m., informing her of the deposition scheduled to take place the following morning. Ms. Serabian therefore drove overnight, during a heavy rainstorm, in order to arrive on time at Mr. Meng's office for the deposition. We sustain the Petitioner's exception in this regard.

**** In addition to this relatively minor factual exception taken by Petitioner, the Commission also requests that this Court conclude that MRPC 8.1 was violated. It appears that the hearing judge concluded that Respondent violated Rule 8.1, but made no express findings of fact to support this conclusion. Upon our examination of the record, there is ample evidentiary support to conclude that Respondent violated this Rule.

In *Attorney Grievance Commission v. Fezell,* 361 Md. 234, 255, 760 A.2d 1108, 1119 (2000), we held that "[t]he practice of law carrie[s] with it special responsibilities of self-regulation, and attorney['s] cooperation with disciplinary authorities is of the utmost importance to the success of the process and the

---

**25.** Maryland Rule 16–759(b)(2)(B) requires that this Court determine whether the findings of fact of the hearing judge are supported by clear and convincing evidence pursuant to Rule 16–757(b).

integrity of the profession." Rule 8.1 provides that a lawyer shall not knowingly make a false statement of fact or knowingly fail to respond to lawful demands for information from the disciplinary authority (the Commission and Bar Counsel in this situation) in connection with a disciplinary matter.

Petitioner made several requests of Respondent for information regarding the three complaints in this case, including numerous written requests. Petitioner sent letters to Steinberg on 9 August 2004, 7 September 2004, 1 October 2004, 3 November 2004, and 24 November 2004 requesting responses to Ms. Serabian's complaint. Regarding Mr. Meng's complaint, a letter request was mailed to Respondent on 29 July 2004. Similar written requests for information related to Ms. Adeleye's complaint were mailed on 27 April 2005 and 10 May 2005, which Respondent finally answered on 25 May 2005 (5 days after the response deadline established by Petitioner). The requests in these letters, introduced as Petitioner's exhibits, went unanswered for the most part. In each letter, Petitioner clearly communicated to Respondent that failure to respond within a reasonable time could be deemed a violation of MRPC 8.1. Either Respondent did not believe Bar Counsel, or did not care. *Attorney Grievance Comm'n v. Brown*, 353 Md. 271, 287, 725 A.2d 1069 (1999) (holding that repeated failures to answer requests for information is a violation of 8.1(b)); *Attorney Grievance Comm'n v. David*, 331 Md. 317, 323–24, 628 A.2d 178, 181 (1993) (holding that it was a violation of Rule 8.1 when attorney failed to answer Bar Counsel's requests for information regarding three separate complaints). Furthermore, the record shows that Petitioner attempted to contact Respondent several times by phone regarding Ms. Serabian's complaint, including calls on 11 November 2004, 17 November 2004, and 22 November 2004. Like the letters, the phone calls largely went unreturned. We therefore sustain Petitioner's exceptions as to the hearing judge's failure to state expressly the factual underpinning of Respondent's lack of cooperation with Bar Counsel's investigative efforts, and conclude that Respondent Steinberg violated Rule 8.1 by

failing to respond timely to Petitioner's requests for information relating to the three complaints.

### Exceptions filed by Respondent.

Pursuant to Maryland Rule 16–758(b), within 15 days after service of notice that the disciplinary hearing record has been filed, each party may file written exceptions to the findings of fact and conclusions of law rendered by the hearing judge. Judge Johnson filed his written Findings of Fact and Conclusions of Law on 8 May 2006. Any exceptions, therefore, had to be filed on or before 23 May 2006. Petitioner timely filed its Exceptions and Recommendation for Sanction on 23 May 2006. Respondent, however, did not file his Exceptions until 26 May 2006. Petitioner filed a motion to strike Respondent's Exceptions on 23 June 2006, 7 days after apparently being served with a copy of Respondent's Exceptions via the U.S. mail.[26]

In *Attorney Grievance Commission v. Stolarz,* we held that "Maryland Rule 16–759 requires this Court, *when exceptions to the hearing judge's findings are taken properly,* to determine whether the findings of fact have been proven by the requisite standards of proof set out in Rule 16–757(b)." 379 Md. at 397, 842 A.2d at 47 (emphasis added). By the same token, if exceptions to the findings of fact and conclusions of law are not taken properly, such as not timely filed, this Court may choose not to consider them. When asked at oral argument for an explanation as to why his Exceptions were filed untimely, Steinberg explained that he had in hand a motion for leave of court to file late when he arrived at our Court Clerk's office to file his Exceptions. A "rather tall" man

---

**26.** Maryland Rule 16–578(c) provides that "within 15 days after service of exceptions or recommendations, the adverse party may file a response." The record indicates that Respondent filed his exceptions on 26 May 2006, but the post mark indicated on the envelope used to serve those documents on Petitioner (the envelope is included in Petitioner's exhibits accompanying the Motion to Strike) indicate that it was not mailed until June 14. Thus, the Response filed by the Petitioner was timely despite the delay between the filing of Respondent's Exceptions and Petitioner's Motion to Strike.

working at the front desk informed him, "Oh you don't have to worry about filing this. It is only 2 or 3 days late. You're not going to have a problem." Further, Steinberg claimed that the "rather tall man" declined to accept the motion. When asked by the Court, Respondent could not recall the name of the person he had spoken to, nor was he able to produce the unfiled motion.

We take judicial notice that there were only two male employees in our Court Clerk's office on or about 26 May 2006. One of them is highly unlikely to be described by a person of normal perception as "rather tall." The other, Alexander Cummings, Esquire, the Clerk of this Court, would not excuse a late filing, as apparently claimed by Respondent, nor is he empowered to do so, in any event. Respondent's explanation is wholly unbelievable.

Notwithstanding the procedural defect in Respondent's filing of his Exceptions, Steinberg's exceptions are unpersuasive on their "merits." In his Exceptions, Steinberg does not raise any challenges to the express findings of fact made by the hearing judge; instead, he makes several legal assertions which boil down to two primary contentions. The first involves whether it was an abuse of discretion for the hearing judge to enter an Order of Default. The second relates to whether Respondent was given a fair opportunity to represent himself at the 2 March 2006 *ex parte* proof hearing.

Respondent first argues that he was not served by Petitioner's employee, Mr. Dennis F. Biennas, on 3 November 2005, with all of the documents purported to have been served upon him, i.e., the Petition for Disciplinary or Remedial Action, Writ of Summons, and various discovery documents. Respondent claims that the packet of documents actually received from the process server contained only the discovery documents, but did not contain the Petition and Summons. Respondent, therefore, argues that the hearing judge improperly entered the Order of Default following Steinberg's failure to file a Maryland Rule 16–754(c) responsive pleading because he was served improperly.

Respondent, following service by Mr. Biennas, filed a naked Certificate of Service with the Clerk's office in the Circuit Court stating that he had responded to the Petitioner's Request for Admission of Facts. The actual responses were mailed to Petitioner on or about 3 December 2005. Nestled in the body of Respondent's unilluminating response to the Request for Admissions was a statement that Respondent "... ha[d] not received the Petition for Disciplinary or Remedial Action." According to Respondent, "[t]his response put the Attorney Grievance Commission on notice of Respondent's claim that he had not received said Petition," and that it was improper for Petitioner to "just file[ ] the Request for Default Judgment" without inquiring further, properly serving a copy of the Petition, or otherwise taking action to contact Respondent regarding the alleged defective service.[27] This argument is unavailing. We hold, instead, that it was not an abuse of discretion by the hearing judge to enter the Order of Default.

Maryland Rule 16–754(a) states that "[d]efenses and objections to the petition, *including insufficiency of service,* shall be stated in the answer and not by preliminary motion." It is well-settled that

> [e]xcept as otherwise provided in these rules or by order of court, discovery material shall not be filed with the court. Instead, the party generating the discovery material shall serve the discovery material on all other parties and promptly shall file with the court a notice stating (A) the type of discovery material served, (B) the date and manner of service, and (c) the party or person served. The party generating the discovery material shall retain the original and shall make it available for inspection by any other party. This section does not preclude the use of discovery material at trial or as exhibits to support or oppose motions.

---

**27.** Bar Counsel took no action in response to the claim of defective service. Ordinarily, it might have been prudent to re-effect service or otherwise supply a copy of the claimed missing papers to Respondent, in an abundance of caution. On the facts of this case, however, no material error is revealed because of this lack of response.

Maryland Rule 2–401(d)(2).[28] An attorney with "over 20 years experience as a litigator," such as Respondent claims to be, knows that requests for discovery and the responses thereto are not served concurrently on the court presiding over the case. Instead, the responses are served solely on the party requesting discovery, and only a copy of the Certificate of Service regarding the responses is filed with the clerk of the court. Even were we to accept Respondent's claim on its face, which we do not, Respondent clearly had notice that a disciplinary action had been filed against him, given that, consistent with his contention, discovery documents had been served upon him, to which he responded in part. Without a responsive pleading in the court file, however, asserting the insufficiency of service claim, it was not an abuse of discretion for the hearing judge to enter an order of default because he had no knowledge, prior to signing the order, of the alleged defect.[29]

Service of the Petition and Summons upon Respondent was supported by the Affidavit of Service of Mr. Biennas filed in the court file. The affidavit expressly stated, under the penalties of perjury, that Respondent Steinberg was served personally with the Writ of Summons and Petition for Disciplinary or Remedial Action. This affidavit, by itself, was sufficient to support the order of default entered by Judge Johnson. *Holly Hall Publ'ns, Inc. v. County Banking & Trust Co.*, 147 Md.App. 251, 259 n. 6, 807 A.2d 1201, 1206 n. 6 (2002) ("The court may rely on affidavits in determining whether to enter a default judgment.").

---

**28.** Maryland Rule 16–756 provides that discovery, after a Petition for Disciplinary or Remedial Action has been filed, is governed by Title 2, Chapter 400 of the Maryland Rules.

**29.** Docket Entry No. 11 shows that the hearing judge entered the Order of Default on 9 December 2005, and the matter was set for a hearing on 11 January 2006. Notice of this hearing was sent to Respondent at his last-known address, and Respondent filed his Motion to Vacate Default Judgment, unsupported by affidavit or oath, on 6 January 2006, signifying that Respondent had knowledge of the default order entered against him. Steinberg inexplicably failed to appear at this hearing.

■ On 6 January 2006, Respondent filed a Motion to Vacate Default Judgment. Finding the reasoning in that motion unpersuasive, the hearing judge denied it on 10 February 2006, and proceeded with the *ex parte* proof hearing originally scheduled for 2 March 2006. Because a judge has broad discretion in ruling on a motion to vacate an order of default, *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 19–20, 904 A.2d 477, 488–89 (2006) (filed 2 August 2006), we shall not hold in this case that Judge Johnson abused his discretion.

An attorney's failure to answer a Petition For Disciplinary or Remedial Action may result in an order of default judgment pursuant to Maryland Rule 16–754(c). According to that Rule, Maryland Rule 2–613 governs vacation of such an order after issuance. Rule 2–613(d) provides that "[t]he [Respondent] may move to vacate the order of default within 30 days after its entry. *The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.*" Md. Rule 2–613(d) (emphasis added); *see also Carter v. Harris*, 312 Md. 371, 539 A.2d 1127 (1988) (holding that Rule 2–613(d) requires that the party moving to vacate state the legal and factual basis for vacating the default judgment). Rule 2–613(e), furthermore, provides that "[i]f the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order."

■ One factor in determining whether to vacate an order of default is whether the respondent presents "a satisfactory explanation . . . why he failed to answer the initial complaint within the time allowed." *Attorney Grievance Comm'n v. Middleton*, 360 Md. 34, 45, 756 A.2d 565, 571–72 (2000) (quoting *Director of Finance v. Harris*, 90 Md.App. 506, 515, 602 A.2d 191, 195 (1992)); *Banegura v. Taylor*, 312 Md. 609, 617–21, 541 A.2d 969, 973–75 (1988) (applying Maryland Rule 2–613(d)). In the present case, the Affidavit of Service of Mr. Biennas, the process server, clearly stated, under the penalties of perjury, that he personally served on Respondent the

Petition for Disciplinary or Remedial Action, the Writ of Summons, Request for Production of Documents, Interrogatories and Request for Admission of Facts and Genuineness of Documents. Respondent's Motion to Vacate Default Judgment, however, contained only his bald and conclusory assertion that "Respondent was never served with a Writ of Summon or Petition." Respondent's motion was not accompanied by any affidavit or oath bolstering his claim that he had not been served properly.

A reasonable hearing judge could conclude, from the totality of the circumstances here, that Steinberg did not proffer an adequate reason for his failure to file a responsive pleading. Respondent's assertion that he never received proper service was unsupported by any evidence in the record, other than his bare allegation. Petitioner, on the other hand, provided an Affidavit of Service which specifically indicates that proper service was made. Mr. Biennas, furthermore, was called as a witness at the 2 March 2006 evidentiary hearing, where he testified, consistent with his affidavit, as to the contents of the packet of documents served on Respondent. Accordingly, we hold that it was not an abuse of discretion for the hearing judge to deny the motion to vacate.

Respondent further argues that he was not able adequately to appear and represent himself at the 2 March 2006 hearing because he was out of the country in the weeks prior to and surrounding the hearing. Specifically, Steinberg contends that, on 18 February 2006, he filed a Motion for Continuance of Hearing scheduled for 2 March 2006, because he would be in Southeast Asia for reasons of business and pleasure from 20 February 2006 through 3 March 2006. Before the hearing judge ruled on this motion, Respondent left the country knowing that the continuance request had not been acted on. Steinberg told us at oral argument that he left his office staff on "high alert" looking for a ruling, and that he was prepared to terminate his vacation early in order to return in time for the hearing if the continuance request was denied. He further claimed that, had the motion been decided

earlier (instead of on 1 March 2006 when it was denied), he could have made it back in time to defend his interests at the *ex parte* hearing, and could have represented himself adequately. We are not persuaded, and hold that his failure to appear at the hearing is inexcusable.

In *Cruis Along Boats, Inc. v. Langley*, 255 Md. 139, 143, 257 A.2d 184, 187 (1969), we held that the grant of a continuance due to the anticipated absence of counsel from a proceeding is not automatic. Additionally, "the granting or withholding of a continuance is discretionary with the trial court, and ... [the judge's] action in this respect, unless arbitrary, will not be reviewed on appeal." *Cruis Along Boats, Inc.*, 255 Md. at 142, 257 A.2d at 186; *see also Greenstein v. Meister*, 279 Md. 275, 368 A.2d 451 (1977) (holding that whether a matter constituted a proper grounds for continuance is within the discretion of the court).[30] That Respondent spent a significant sum of money on plane tickets and the like does not entitle him automatically to a continuance. Respondent knew that his continuance request had not yet been decided and nevertheless chose to leave the country with the matter unresolved. It was not an abuse of discretion for the hearing judge to conclude that Respondent's trip to Asia, whether for business or pleasure, was an insufficient reason to delay the proceedings further. Accordingly, we overrule the Respondent's exceptions.

### IV. Review of the Conclusions of law

As to the hearing judge's conclusions of law, this Court has the ultimate authority to decide whether a lawyer has violated the MRPC. *Harrington*, 367 Md. at 49, 785 A.2d at 1267–68 (citing *Attorney Grievance Comm'n v. Garland*, 345 Md. 383, 392, 692 A.2d 465, 469 (1997); *Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 599, 667 A.2d 659, 663 (1995)). Accordingly, "our consideration is essentially *de*

---

**30.** In *Cruis Along Boats, Inc.*, the issue was whether absence of counsel at a hearing due to illness was sufficient reason to compel the grant of a continuance.

*novo, even where default orders and judgments have been entered at the hearing level." Harrington,* 367 Md. at 49, 785 A.2d at 1267–68 (emphasis added); *see also, e.g., Attorney Grievance Comm'n v. Shaw,* 354 Md. 636, 646, 732 A.2d 876, 881 (1999) ("This Court has original and complete jurisdiction over attorney disciplinary proceedings. Accordingly, the ultimate decision as to whether a lawyer has violated the [MRPC] rests with this Court.") (internal citations omitted).

Based on our independent review of the record and findings of fact, we conclude that Judge Johnson was correct in concluding that Respondent Andrew M. Steinberg committed the following violations of the Maryland Rules of Professional Conduct, in addition to MRPC 8.1 addressed earlier.

### A.

### *Complaints of Christine Serabian and George E. Meng, Esquire.*

■ MRPC 1.1 requires a lawyer to provide competent representation to a client, and to exercise "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Respondent violated MRPC 1.1 when he failed to appear at at least one client meeting, arrived an hour late each to two of the mediation sessions, and participated unprepared in the second mediation session. As this Court has stated, such actions do not reflect the *thoroughness or preparation* that the legal profession demands, and constitute a violation of MRPC 1.1. *See generally Attorney Grievance Comm'n v. Ficker,* 319 Md. 305, 315, 572 A.2d 501, 509 (1990) (holding that it is a violation of Rule 1.1 when the attorney appears in court unprepared or fails to appear completely). Furthermore, such neglect is a clear violation of MRPC 8.4(d), which prohibits conduct that is prejudicial to the administration of justice. *Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 83, 753 A.2d 17, 31 (2000) ("We have held that failure to be punctual in a scheduled court appearance is 'not only detrimental to the administration of justice but also constitute[s] discourteous conduct degrading to the tribu-

nal.' ") (quoting *Attorney Grievance Comm'n v. Howard,* 282 Md. 515, 523, 385 A.2d 1191, 1196 (1978)).

Steinberg likewise violated MRPC 1.3, which requires that a lawyer act with "reasonable diligence and promptness" in his representation of Ms. Serabian. In *Attorney Grievance Commission v. Awuah,* 374 Md. 505, 522, 823 A.2d 651, 661 (2003), we held that failure to deliver a client's file after termination of the representation, despite repeated requests from the client, is a violation of Rule 1.3. Steinberg's representation was terminated in February 2004 and, despite numerous requests from Ms. Serabian for the file, Respondent did not return her papers until much later. During that time, Ms. Serabian needed the file to represent herself in the ongoing litigation. She suffered significant set-backs in her efforts to overturn the sanctions imposed upon her due to the omissions of Respondent. Additionally, Steinberg's inexcusable six-month delay in withdrawing formally from the court case, after his representation was terminated, demonstrates a lack of requisite diligence and promptness.

MRPC 1.4 requires a lawyer to comply promptly with reasonable requests from the client for information, to explain on-going matters to the extent reasonably necessary to allow a client to make informed decisions, and to keep the client informed about the status of pending matters. Respondent here failed to explain adequately the outcome of the mediation sessions. Most significantly, the record shows that Respondent presented the contents of an offer made by opposing counsel to Ms. Serabian's brother,[31] but failed to communicate the contents of the offer to Ms. Serabian.

In *Attorney Grievance Commission v. Harris,* 366 Md. 376, 784 A.2d 516 (2001), we held that the attorney violated Rule 1.4(a) and (b) by explaining the status of the case and the

---

**31.** Respondent represented both Ms. Serabian and her brother, Michael, in the caveat proceedings, over an objection by Ms. Serabian that such dual representation constituted a potential conflict of interest. Because no allegation regarding a conflict was raised in the Petition for Disciplinary and Remedial Action, we shall not address it further here.

consequences of dismissal to one of his clients, but not to the others in the group he was representing.[32] In other words, we held that keeping one client reasonably apprised of the status of the case, to the exclusion of another affected client, is a violation of MRPC 1.4. *Harris*, 366 Md. at 396–97, 784 A.2d at 527–28. Additionally, we held that the attorney violated Rule 1.4(a) by not keeping the client reasonably informed as to the status of the client's pending case, which included the failure to relay a settlement offer made by the client's insurance company. *Harris*, 366 Md. at 399, 784 A.2d at 529. Respondent likewise violated Rule 1.2 by his actions. This Rule requires that a lawyer abide by a client's decision concerning the objectives of the representation and whether to settle matter, and also requires the lawyer to consult with the client as to the means by which the objectives may be achieved.

Respondent further violated Rule 1.4 by failing to communicate on at least two occasions the status of depositions. Steinberg, on the eve of the 13 November 2003 deposition, cancelled the scheduled deposition, falsely citing as a justification Ms. Serabian's refusal to appear. Notwithstanding this direct misrepresentation, Steinberg did not communicate the cancellation to Ms. Serabian, evidenced by her showing up, unaccompanied by her counsel, at opposing counsel's office to be deposed on 13 November. The record shows that Steinberg and Mr. Meng rescheduled the deposition for 22 January 2004. While Ms. Serabian knew she would be deposed sometime in January, Respondent did not communicate the final date to his client, also a violation of Rule 1.4.

Respondent violated MRPC 1.5(c), regarding contingency fees, when he failed to memorialize the fee agreement in a writing signed by the client. Implicit in this failure is the absence of memorialization of the method by which the fee was determined, the percentage(s) that would have accrued to

---

32. In that case, the attorney was representing a family.

the Respondent in the event of settlement, and an allocation of responsibility for the litigation expenses.

MRPC 1.8 mandates that a lawyer shall not enter an agreement with a client that limits the lawyer's liability for professional negligence, unless the client is represented independently. The hearing judge found that Respondent sought to have Ms. Serabian, without the assistance of independent counsel, execute a release of any malpractice claims during their 5 October 2004 meeting. He neither advised her of the desirability of obtaining counsel, nor allowed her to do so. The findings of fact indicate that when she entered the room, the "Release in Full" was sitting on the table, ready to be signed. This is a violation of MRPC 1.8.

MRPC 1.16 requires a lawyer to withdraw from a case if the client terminates the representation. The testimony from Ms. Serabian and Mr. Meng indicates that Respondent's representation was terminated in February 2004. Both Ms. Serabian and Mr. Meng repeatedly requested that Steinberg withdraw from the caveat proceeding, but the motion to withdraw was not filed until 13 August 2004. Steinberg, therefore, violated MRPC 1.16 when he failed to withdraw in a timely fashion despite Ms. Serabian having terminated his representation of her. *Attorney Grievance Comm'n v. Davis*, 375 Md. 131, 153, 825 A.2d 430, 443 (2003) (holding that the attorney violated Rule 1.16(a)(3) when she failed to strike her appearance after the client terminated the representation).

Respondent also violated MRPC 3.2 and 3.4. From 12 March 2003 (the date on which Mr. Meng made initial contact) through the date of his actual withdrawal, Steinberg engaged in a pattern of delay which included unreturned phone calls, unanswered letters, cryptic excuses for lack of communication, and failure to comply with reasonable requests to depose his client, Ms. Serabian. Mr. Meng, in particular, attempted to contact Respondent on numerous occasions. The vast majority of those calls went unreturned and often resulted in the scheduling of hearings or meetings without Steinberg's cooperation or input.

Respondent's behavior also displayed an unwillingness to comply with discovery, in violation of MRPC 3.2 and 3.4. The Petition and complainants' testimony show that Respondent twice contacted Mr. Meng in order to cancel on the eve of both scheduled deposition dates. The first "cryptic" excuse given was that of a sick relative who required medical attention. The second was the misrepresentation regarding Ms. Serabian's refusal to attend the 13 November 2003 deposition. Respondent's actions not only prolonged litigation to an unreasonable degree, in violation of MRPC 3.2, but also violated Respondent's duty imposed by MRPC 3.4(d) to comply with proper discovery requests from opposing counsel. *See Attorney Grievance Comm'n v. Culver*, 381 Md. 241, 255, 263–64, 849 A.2d 423, 431, 436–37 (2004) (holding that an attorney violated MRPC 3.2 and 3.4(d) when he failed to appear for deposition); *see generally Attorney Grievance Comm'n v. West*, 378 Md. 395, 401–03, 836 A.2d 588, 591–92 (2003) (finding that respondent violated both MRPC 3.2 and 3.4(d) when neither he nor his client appeared for deposition).[33]

Additionally, the record shows that Meng attempted to contact Respondent on several occasions in February, March, and in June in order to procure Steinberg's formal withdrawal from the caveat case. It was not until 8 June that he was able to speak with Respondent, at which time Steinberg again made a misrepresentation as to his having filed the motion to withdraw.

 MRPC 4.1 prohibits a lawyer from making false statements of material fact to third persons. This includes misrepresentations made to clients, opposing counsel, or any other third person. Throughout his representation of Ms. Serabian, the record reveals several instances where Respondent made

---

**33.** Steinberg's justification for canceling the first deposition, scheduled for 23 October 2003, was that he had an ill aunt that needed his assistance. At this juncture, it is not necessary for us to determine whether this reason was legitimate or truthful. Respondent's direct misrepresentation relating to the 13 November 2003 deposition is sufficient to find that Steinberg violated MRPC 3.2 and 3.4(d) when he avoided attempts by Mr. Meng to depose his client, Ms. Serabian.

misrepresentations. The most glaring is the misrepresentation made to Mr. Meng regarding the 13 November deposition, when Respondent told opposing counsel that his client refused to be deposed. Ms. Serabian testified at the *ex parte* hearing that she did not make such a statement. A second major misrepresentation followed Steinberg's discharge, when he informed both Ms. Serabian and Mr. Meng that he had filed a motion to withdraw. He did not file actually until months later. These actions further violate MRPC 8.4(c), which prohibits a lawyer from engaging in conduct that is dishonest, fraudulent, deceitful, or which constitutes a material misrepresentation.

### B.

*Complaint of Annie M. Adeleye.*

Respondent agreed to represent his client in a bankruptcy proceeding, and accepted an advance fee of $1,000.00 for the representation. As an attorney, Respondent is charged with possessing the legal knowledge and skill necessary to handle any case he accepts. When he failed to file the Chapter 13 bankruptcy petition, and took no further action to protect Ms. Adeleye's home in the impending foreclosure sale, he breached his duty to provide competent representation according to MRPC 1.1. *See Attorney Grievance Comm'n v. Sutton*, 394 Md. 311, 320, 906 A.2d 335, 340 (2006) (holding that the attorney violated MRPC 1.1 when he failed to file a Chapter 13 plan on behalf of his client, although he had filed the petition); *Attorney Grievance Comm'n v. Granger*, 374 Md. 438, 447–48, 823 A.2d 611, 617 (2003) (holding that it was a violation of MRPC 1.1 when respondent failed to file a bankruptcy petition on behalf of his client in order to protect the client's home, the express purpose of the representation); *Attorney Grievance Comm'n v. Pinkney*, 311 Md. 137, 141, 532 A.2d 1367, 1369 (1987) (holding that it was a violation of the MRPC when an attorney led her client to believe that a lawsuit had been filed on her behalf when, in fact, it had not been filed).

Respondent likewise violated MRPC 1.2 by failing to file the bankruptcy petition. The express purpose of undertaking the representation was to file a Chapter 13 bankruptcy petition in order to protect Ms. Adeleye's home. Despite Respondent's assurance on several occasions that the petition had been filed, he failed to do so. This failure was in direct contravention of the client's wishes to file for bankruptcy. *See Granger*, 374 Md. at 448, 823 A.2d at 617. MRPC 1.2 further requires that the lawyer consult with the client as to the means by which the objectives of the representation are to be pursued. The record clearly shows, and the hearing judge concluded, that one day after the foreclosure sale of Ms. Adeleye's home, Steinberg filed a Chapter 7 bankruptcy petition without the consent, permission, or signature of his client. Without consulting with his client prior to the filing of this bankruptcy petition, Respondent further violated Rule 1.2.

MRPC 1.3, as stated earlier, requires that a lawyer act with "reasonable diligence and promptness" in his or her representation of a client. When he agreed to represent Ms. Adeleye, Respondent was aware that the purpose of the representation was to file the petition in order to protect her home. He knew or should have known that prompt action was important under the circumstances, especially given the time frame repeatedly communicated to him by Ms. Adeleye. Respondent did not take action to forestall the foreclosure sale and not until the day after the sale did he file a Chapter 7 petition. Not until four months after the sale did he attempt to set aside the foreclosure sale directly. By failing to act until after the foreclosure sale occurred, Steinberg failed to observe due diligence in filing the petition and protecting his client's home. *Granger*, 374 Md. at 448, 823 A.2d at 617.

Respondent Steinberg also violated MRPC 1.4 in his representation of Ms. Adeleye. This Rule required that Respondent comply with reasonable requests for information and reasonably keep informed Ms. Adeleye about the status of the efforts to stave off the impending foreclosure sale. Respondent's repeated dishonest responses regarding filing the petition, and that his client's home was safe from sale, coupled

with his failure to apprise her of the true status of the bankruptcy petition, constituted a violation of MRPC 1.4. *Granger*, 374 Md. at 448–49, 823 A.2d at 617. MRPC 1.4 additionally requires a lawyer to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent is required by these Rules." Respondent violated the Rule when he filed a Chapter 7 petition without the consent or signature of his client. He neither informed the client of the action that he was about to take, nor did he obtain Ms. Adeleye's signature or consent prior to filing.

When Steinberg finally filed a "Motion to Reconsider Ratification and Confirmation of Trustees Sale and to Set Aside Sale of May 29, 2003" in the foreclosure case, he supported the motion with an assertion that his client had not received timely notice of the sale. There is ample support in this record for the hearing judge's determination that Ms. Adeleye, on several occasions, informed Respondent of the impending sale. Steinberg's filing of the aforementioned Motion was a violation of MRPC 3.1, which requires that the lawyer "not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a good basis for doing so that is not frivolous." Here, Steinberg knew his client had notice of the sale. Because he knew of the falsity of these statements at the time he filed the motion, this misrepresentation also constitutes a violation of MRPC 3.3, which prohibits a lawyer from knowingly making a false statement of material fact or law to a tribunal. Additionally, these same acts on the part of Respondent are violations of MRPC 8.4(c) and (d), which state that "[i]t is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice . . . ."

Further, Respondent violated MRPC 8.4(c) when he misrepresented to Ms. Adeleye that he filed the Chapter 13 Petition. In *Harrington*, we held that it was a violation of MRPC 8.4(c) where an attorney lead his client to believe that

he had filed a law suit on her behalf when he, in fact, had not. 367 Md. at 48, 785 A.2d at 1267; *see also Attorney Grievance Comm'n v. Guberman,* 392 Md. 131, 135–36, 896 A.2d 337, 339–40 (2006) (holding that an attorney violated MRPC 8.4(c) when he falsely represented to the partners of his firm that he had filed an appeal on behalf of a client).

Respondent also violated MRPC 3.2, which required Steinberg to make all reasonable efforts to expedite litigation consistent with the interests of the client. By not filing the Chapter 13 bankruptcy petition in a prompt manner, and not taking any action to set aside the foreclosure sale until months after it occurred, Respondent did not take reasonable steps necessary to advance the disposition of the case, in contravention of the best interests of his client.

Finally, Respondent violated MRPC 1.5 pertaining to reasonableness of fees.[34] In *Attorney Grievance Commission v. Monfried,* 368 Md. 373, 393, 794 A.2d 92, 103 (2002), we held that "[a] fee charged for which little or no work was performed is an unreasonable fee." In that case, although the hearing judge had not expressly found that the actual fee charged by the attorney was unreasonable, we concluded that

---

**34.** MRPC 1.5 provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

the deficiencies in the attorney's handling of the case[35] were sufficient to make the fee unreasonable, regardless of the amount received. *Monfried,* 368 Md. at 394, 794 A.2d at 104; *see also Attorney Grievance Comm'n v. Dietz,* 331 Md. 637, 646–47, 629 A.2d 678, 683 (1993) (holding that an attorney's numerous other violations of the MRPC in his representation of a client made it unreasonable for the attorney to retain the fee paid to him, even if the fee agreement was reasonable at the outset of the representation). Even though the $1,000.00 advance fee paid by Ms. Adeleye might appear reasonable on its face in light of the undertaking, and the hearing judge did not find any facts to the contrary, we conclude that the fee became unreasonable when Respondent performed little or no work to protect prospectively his client from the impending foreclosure sale of her home, and failed to take timely action to set aside the sale.

## V. Sanction

All that remains is to determine the proper sanction. Maryland Rule 16–759(c) provides that "[t]he Court of Appeals may order (1) disbarment, (2) suspension, (3) reprimand, (4) inactive status, (5) dismissal of the disciplinary or remedial action, or (6) a remand for further proceedings." Petitioner has recommended that Respondent Steinberg be disbarred. Steinberg has not filed any recommendations as to the appropriate sanction.

■■■■■ We concluded, with regard to the complaints of Ms. Serabian and Mr. Meng, that Respondent violated MRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.8, 1.16, 3.2, 3.4, 4.1, 8.1, 8.4(c) and 8.4(d). We furthermore concluded that Respondent violated MRPC 1.1, 1.2, 1.3, 1.4, 1.5, 3.1, 3.2, 3.3, 8.1, 8.4(c), and 8.4(d) in the course of his representation of Ms. Adeleye. "The gravity of misconduct," however, "is not measured solely by the number of rules broken but is determined largely by the lawyer's

---

**35.** The hearing judge found, and this Court agreed, that the attorney violated MRPC 1.1, 1.3, 1.4, 8.1(b), and 8.4. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 394, 794 A.2d 92, 104 (2002).

conduct." *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 568, 745 A.2d, 1037, 1044 (2000) (citing *Attorney Grievance Comm'n v. Milliken*, 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998)). Furthermore, "[t]he sanction for a violation of the Maryland Rules of Professional Conduct depends on the facts and circumstances of each case, including a consideration of any mitigating factors." *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 223, 892 A.2d 533, 541 (2006) (citing *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 375, 872 A.2d 693, 713 (2005)); *Attorney Grievance Comm'n v. Atkinson*, 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000) ("In addition to the facts underlying the misconduct, the attorney's prior grievance history, as well as any mitigating factors are part of the equation."). Considering the facts and circumstances of the case, we find that disbarment is the proper sanction.

In *Attorney Grievance Commission v. Gore*, 380 Md. 455, 471–72, 845 A.2d 1204, 1213 (2004), we set out the primary intendment of the attorney discipline process:

> [t]he purpose of discipline under the Maryland Rules of Professional Conduct is not to punish the lawyer, but to protect the public and the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Post*, 379 Md. 60, 70, 839 A.2d 718, 724 (2003). We protect the public through sanctions against offending attorneys in two ways: through deterrence of "the type of conduct which will not be tolerated," *id.*, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. See *Attorney Grievance Comm'n v. Protokowicz*, 326 Md. 714, 729, 607 A.2d 33, 40–41 (1992). The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Post*, 379 Md. at 70–71, 839 A.2d at 724.

These jurisprudential principles of attorney discipline are well-settled in Maryland. *See, e.g., Attorney Grievance Comm'n v. Gallagher*, 371 Md. 673, 713–14, 810 A.2d 996, 1020 (2002); *Atkinson*, 357 Md. at 656, 745 A.2d at 1092; *Attorney Griev-*

*ance Comm'n v. Hess*, 352 Md. 438, 453, 722 A.2d 905, 913 (1999).

We long have held that repeated acts of dishonest, fraudulent, or misleading behavior may warrant a sanction of disbarment. In *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001), we commented generally that:

> Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in any attorney's character. Disbarment ordinarily should be the sanction for intentional dishonest conduct.

*See also Attorney Grievance Comm'n v. Guberman*, 392 Md. at 137, 896 A.2d at 340–41 ("[C]andor and truthfulness are two of the most important moral character traits of a lawyer.") (citations omitted).

This Court held in *Attorney Grievance Commission v. Lane*, 367 Md. 633, 790 A.2d 621 (2002), that disbarment is the appropriate sanction when an attorney has engaged in "repeated material misrepresentations that constitute a pattern of deceitful conduct, as opposed to an isolated instance . . . ." In that case, Mr. Lane was found to have violated MRPC 1.1, 1.2, 1.3, 1.4(a) and (b), and 8.4(a), (c), and (d) in connection with his representations of two separate complainants. More specifically, we found that the respondent had violated the MRPC through the following actions:

> his failure to provide [the client] with the terms of the contingency fee in writing, respondent failed to understand how to file for an injunction and failed to take action on [the client's] case, he did not abide by [the client's] decisions concerning the objectives of the case, he did not act in a diligent and prompt manner, respondent knowingly misled and made misrepresentations to [his client], respondent's misrepresentations prevented his client from making in-

formed decisions about her case and kept her from being reasonably informed about the status of her case, and respondent's deceit kept [the client] from pursuing her interests in court.

*Lane,* 367 Md. at 641, 790 A.2d at 625.

In the present case, Respondent Steinberg failed to reduce Ms. Serabian's contingency fee agreement to writing, failed to file a petition on behalf of Ms. Adeleye, failed to relay a settlement offer made during court-ordered mediation, failed to withdraw promptly from the caveat proceeding after Ms. Serabian terminated his representation, failed to communicate with his client as well as opposing counsel, and engaged in tactics aimed at stalling discovery, ultimately leading to significant sanctions being entered against his client. In addition, Respondent made numerous misrepresentations throughout his representations of Ms. Serabian and Ms. Adeleye. Steinberg misrepresented to both Mr. Meng and Ms. Serabian that he filed a motion to withdraw when he had not. He informed opposing counsel that his client refused to attend a scheduled deposition when she had made no such statement. He falsely informed Ms. Adeleye that he filed a Chapter 13 bankruptcy petition when he had not, causing her to lose her house. Lastly, he misrepresented to the court that neither he nor his client had received notice of the foreclosure date, when, in reality, he had notice of it. Such a pattern of neglectful and deceitful conduct, coupled with the deceitful attempts to conceal Respondent's lack of diligence, merits disbarment. *Guberman,* 392 Md. at 137, 896 A.2d at 340–41; *Lane,* 367 Md. at 641, 647–48, 790 A.2d at 625, 629.

Before finally concluding whether disbarment is the proper sanction, the Court must pause to consider any particular aggravating or mitigating factors. *Stolarz,* 379 Md. at 403, 842 A.2d at 51. As we have stated in the past, mitigation is analyzed traditionally by this Court under the recommended standards urged by the American Bar Association (ABA). In *Attorney Grievance Commission v. Glenn,* 341 Md. 448, 448–89, 671 A.2d 463, 483 (1996), we stated that:

The mitigating factors listed in the ABA standard include: absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to makes restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

(footnote omitted). When, however, it appears that the attorney has engaged in intentional dishonest conduct (as is the case here), the bar is set especially high, and disbarment will be the appropriate sanction absent "compelling extenuating circumstances." *See Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485.

Steinberg offers no mitigating evidence. Respondent's prior disciplinary record weighs heavily against him. In 1984, Respondent was issued an informal admonition by the District of Columbia Court of Appeals for improperly distributing funds from a client settlement. *See Attorney Grievance Comm'n v. Steinberg,* 385 Md. 696, 701–02, 870 A.2d 603, 606–07 (2005) (recounting prior attorney disciplinary proceedings instituted against Respondent). On 23 May 1997, the Virginia State Bar's Fifth District Subcommittee publicly reprimanded Respondent when it found that he engaged in dishonest conduct, mishandled client funds, failed to exercise diligence and keep the client informed, failed to deliver client's papers to new counsel, and failed to make a prompt refund of the unearned portion of the client's advance fees. On 30 November 1998, the District of Columbia Court of Appeals ordered Respondent suspended for 30 days from the practice of law in the District of Columbia. *In re Steinberg (Steinberg I),* 720 A.2d 900, 901 (D.C.1998) *(per curiam).* On 2 November 2000, by *per curiam* order, the District of Columbia Court of Appeals again suspended Respondent for 30 days when he engaged in "dilatory conduct" which, according to the court,

was aimed at stalling Bar Counsel's requests for information in two overlapping complaints filed against him. *In re Steinberg (Steinberg II)*, 761 A.2d 279 (D.C.2000). On 17 April 2001, Respondent, in a reciprocal discipline case, received another informal reprimand as a consequence of failing to keep a client reasonably informed as to the status of the case, in violation of 1.4(a) of the District of Columbia's rules of professional conduct. *See Attorney Grievance Comm'n v. Steinberg*, 385 Md. at 701–02, 870 A.2d at 606. Finally, and most recently, Respondent was suspended indefinitely from the practice of law in May 2005 for violating MRPC 8.1 and 8.4(d), when he failed to cooperate with Bar Counsel in the investigation of yet another complaint filed against him. *Attorney Grievance Comm'n v. Steinberg*, 385 Md. at 701, 870 A.2d at 606.

The facts of the present case display several other aggravating factors. Respondent failed to cooperate with or give disclosure to Bar Counsel in the investigation of the three present complaints filed against him. Respondent showed no timely good faith efforts to make restitution or rectify the damage caused by his misrepresentations.[36] As an attorney of 20 years standing at the Bar, Respondent cannot claim ignorance or lack of experience. The sanction of disbarment is appropriate.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THE COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUMMARY JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ANDREW M. STEINBERG.**

---

**36.** While the record shows that Respondent filed a Motion to Set Aside the sale of Ms. Adeleye's home, he only did so several months after sale. The record also indicates that he made no attempts whatsoever to rectify the *ex parte* sanctions entered against Ms. Serabian.